Cite as 2019 Ark. 247

# SUPREME COURT OF ARKANSAS

**No.** CR–18–900

| | | |
|---|---|---|
| | | **Opinion Delivered:** September 19, 2019 |
| COREY D. PERKINS | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR 2017-0340] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE WENDELL GRIFFEN, JUDGE |
| | | AFFIRMED; REMANDED TO CORRECT THE SENTENCING ORDER. |

**RHONDA K. WOOD, Associate Justice**

Appellant Corey Perkins was convicted of first-degree battery, a terroristic act, and possession of a firearm by certain persons. Perkins argues that his convictions must be reversed and the charges dismissed because his right to a speedy trial was violated. Alternatively, he asserts that his case must be reversed and remanded for a new trial because the circuit court improperly limited his cross-examination of the victim. We affirm Perkins's convictions, but remand with instructions to correct the sentencing order.

I. *Brief Facts*

On the night of November 8, 2016, Corey Perkins shot Wilber Johnson. The bullet went through Johnson's right hand and left forearm, resulting in lasting, disabling injuries. Little Rock police officers arrested Perkins on December 29, 2016. Following his arrest,

Perkins was transported and held in the Arkansas Department of Correction in connection with a separate criminal proceeding.

On July 27, 2017, defense counsel requested an Act 3 mental evaluation to determine Perkins's fitness to stand trial. The court granted the motion. Due to repeated transportation complications, Perkins's evaluation was not completed until March 28, 2018. The evaluation concluded that Perkins was fit to stand trial. On April 6, 2018, the report was filed with the court, and on July 26, 2018, Perkins's bench trial began. Perkins was convicted and sentenced. He now appeals.

## II. *Speedy Trial*

As an initial matter, the State contends that Perkins did not preserve his specific speedy-trial argument for appeal. Perkins's counsel filed a motion for release under Arkansas Rule of Criminal Procedure 28.1(a) and on appeal argues Rule 28.1(b). Although the State recognizes that Perkins also filed a written, pro se speedy-trial motion under Rule 28.1(b), it argues that he failed to obtain a ruling from the circuit court. That is incorrect.

On December 11, 2017, the court conducted a hearing to report on the status of the Act 3 evaluation. Perkins, against the advice of his counsel, orally argued the points advanced in his written, pro se speedy-trial motion. The circuit court entertained his motion, gave a reasoned explanation in response, and expressly "denie[d] the motion made by Mr. Perkins." The speedy-trial issue is therefore preserved on appeal.

We conduct a de novo review to determine whether specific periods of time are excludable under our speedy-trial rules. *Carter v. State*, 2016 Ark. 152, at 3, 484 S.W.3d 673, 674. Once a defendant establishes that his trial took place outside the speedy-trial

2

period, the State bears the burden of showing that the delay was the result of the defendant's conduct or otherwise justified. *Id.* Perkins contends the State failed to bring him to trial within twelve months of the date of his arrest, as required by Rule 28.1(b) of the Arkansas Rules of Criminal Procedure. Pursuant to Rule 28.2(a), Perkins's speedy-trial clock began to run on December 29, 2016. Ark. R. Crim. P. 28.2(a) (2019). His bench trial began 574 days later, on July 26, 2018. This satisfies a prima facia showing of a speedy-trial violation.

The State must establish that at least 209 days were excludable from the speedy-trial calculation. To meet this burden, the State points to the delay attributable to the defendant's request for an Act 3 mental evaluation. Specifically, the State contends that the time between the court orally ordering the Act 3 evaluation and the report's filing date is excludable.

Rule 28.3(a) of the Arkansas Rules of Criminal Procedure expressly provides that the period of delay resulting from an examination of the defendant's competency shall be excluded in computing the time for trial. Ark. R. Crim. P. 28.3(a) (2019). When tolling time for a mental evaluation, we have consistently stated that time is excluded from the "date the exam is ordered to the report's file date." *Davis v. State*, 375 Ark. 368, 373, 291 S.W.3d 164, 168 (2009). We have equally maintained that an oral order announced from the bench does not become effective until reduced to writing and filed. *E.g.*, *Zimmerman v. Circuit Court of Miller Cty.*, 2018 Ark. 264, at 5, 555 S.W.3d 406, 409. Accordingly, we exclude the time from the circuit court's written order that was entered on September 6, 2017, until and the resulting evaluation was filed on April 6, 2018. In other words, 212 days are excludable as a result of Perkins's request for a mental evaluation. Therefore, Perkins was brought to trial within 365 days.

Perkins asserts that because he was not personally responsible for missing his various Act 3 appointments, the State must further justify the delays. In *Brawley v. State*, we considered and rejected this very argument. 306 Ark. 609, 613, 816 S.W.2d 598, 601 (1991) (reasoning that "[t]he literal language of Rule 28.3(a) states simply that the period required by a competency examination is excluded"). Because the State established that at least 209 days were excludable, the circuit court did not err in denying Perkins's motion to dismiss.

### III. *Cross-Examination*

Perkins also argues that his case must be reversed and remanded for a new trial because the circuit court abused its discretion in limiting his cross-examination of the victim, Wilber Johnson. The circuit court enjoys wide latitude to impose reasonable limitations during cross-examination of matters that are slightly relevant. *Gordon v. State*, 326 Ark. 90, 94, 931 S.W.2d 91, 93 (1996). The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse that decision absent a manifest abuse of discretion. *E.g.*, *Scamardo v. State*, 2013 Ark. 163, at 7, 426 S.W.3d 900, 904.

Specifically, Perkins contends the circuit court erred in not allowing him to ask six questions during Johnson's cross-examination. Immediately prior to the questions, Perkins attempted to admit several pages of Johnson's UAMS medical records as defense exhibits. The circuit court ruled that the proffered reports were irrelevant because they did not make it more or less likely that a battery occurred. Nevertheless, Perkins engaged the court in the following colloquy:

| | |
|---|---|
| [THE DEFENSE]: | Your Honor, can I ask questions from these reports summarized and see what his response is? |
| THE COURT: | Well, let's see what the question is. |

4

[THE DEFENSE]: I'm going to ask him if on the night that he was brought in or a few days later on the 11th he accused the UAMS of stealing his keys and his money. That's the first one.

[. . . .]

[THE STATE]: No, Your Honor. There is an objection to relevance.

THE COURT: What is the objection? Relevancy?

[THE STATE]: Yes, Your Honor.

THE COURT: Sustained.

[ . . . .]

[THE DEFENSE]: [No.] 7 is the question I wanted to ask him about his psychiatric history, you know.

[THE STATE]: Objection, relevance.

THE COURT: Let's hear what the question is. What's your question?

[THE DEFENSE]: You allegedly had a psychiatry − history of psychiatry. Can you tell us what that's all about?

[THE STATE]: Object.

THE COURT: Sustained.

[THE DEFENSE]: No. 8, you were incoherent when you went in. And obviously, I put that to the fact he was incoherent in the hospital. How could he report my client supposedly shot him?

[THE STATE]: Objection again, Your Honor.

THE COURT: Sustained.

[THE DEFENSE]: Defendant's 9, it says he's paranoid schizophrenic. I obviously jump into that and find out can he tell the truth or not? Your turn.

[THE STATE]: Objection, relevance.

THE COURT: Sustained.

5

[THE DEFENSE]: And Defendant's Exhibit No. [10], it says suspect underlying mental illness. I wanted to know if that affected what he did that night.

[. . . .]

[THE STATE]: I'm sorry. Objection; sustained.

[. . . .]

THE COURT: Relevancy objection sustained.

[THE DEFENSE]: And Defendant's Exhibit No. 11 is it talks about the medical records; does he have a history – it says he has a history of schizophrenic. I would like to find out if he can tell the truth as I said before.

[THE STATE]: Objection, relevance.

THE COURT: Objection sustained.

[THE DEFENSE]: Defendant's Exhibit No. 12 is probably redundant, so I will withdrew that. The others I would ask to be admitted.

THE COURT: On the basis of relevancy, the objections are sustained.

Rule 103 of the Arkansas Rules of Evidence states that error may not be predicated upon a ruling that excludes evidence unless "the substance of the evidence was made known to the court by offer or apparent from the context within which the questions were asked." Ark. R. Evid. 103(a)(2) (2019). When a court limits questions seeking to attack a witness's credibility on cross-examination, we have consistently held that counsel must make a proffer as to what the expected answer would be. *E.g.*, *Vaughn v. State*, 252 Ark. 260, 262, 478 S.W.2d 759, 761 (1972); *Washington Nat'l Ins. Co. v. Meeks*, 249 Ark. 73, 79, 458 S.W.2d 135, 139 (1970) (noting that a showing of proof is necessary where the answers sought to be elicited relate only to an attack upon the credibility of the witness). Absent a proffer, this

court has no means of determining prejudice and is precluded from reviewing the issue on appeal. *Haltiwanger v. State*, 322 Ark. 764, 767, 912 S.W.2d 418, 420 (1995).

Here, the State objected to the relevance of each of Perkins's six questions. On appeal, Perkins contends that each question related to Johnson's memory, credibility, and perception. But this was not made apparent to the circuit court. Indeed, Perkins failed to precisely frame his questions or apprise the court of any of the answers that he expected to elicit. Without a proffer, we can only review the court's ruling if the substance of the answers is apparent from the context of the questioning. Ark. R. Evid. 103(a)(2). Although Perkins avers that his questions would have facilitated Johnson's impeachment, the immediate context suggests the exact opposite. Indeed, immediately before asking his questions relating to the UAMS records, Perkins attempted to admit the records themselves. In ruling on the documents' relevance, the circuit court specifically asked Perkins whether they would be used for impeachment. Perkins responded that their purpose was "not to impeach [Johnson] but to prove what state he was in that night." Because Perkins failed to proffer the answers that he hoped to elicit on cross-examination, and because the answers were not otherwise apparent from the contradictory context, we are precluded from reviewing the issue on appeal. *Haltiwanger, supra*. We find that the circuit court did not abuse its discretion.

IV. *Sentencing Order*

Although we affirm Perkins's convictions, we remand to the circuit court with instructions to correct a clerical error in the sentencing order. The circuit court found Perkins guilty of a terroristic act constituting a Class Y felony under Arkansas Code

7

Annotated section 5-13-310(b)(2) (Repl. 2013). As a result, Perkins was sentenced as a habitual offender to a mandatory life sentence under Arkansas Code Annotated section 5-4-501(d)(1)(A) (Supp. 2017).

Although the sentencing order indicates that Perkins was sentenced to life in prison for the terroristic act, it misidentifies the offense as a Class B felony. We instruct the circuit court to correct the sentencing order so that it accurately reflects that Perkins was convicted of a Class Y felony for the terroristic act.

V. *Rule 4-3(i)*

In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant. No prejudicial error has been found.

Affirmed; remanded to correct the sentencing order.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. On the night in question, the victim, Wilbert Johnson, presented at UAMS for treatment of his gunshot wound. Proffered medical records from that night reflect that he was disoriented and delusional—quite a contrast from the cogent and coherent testimony that he gave at trial. On cross-examination, Mr. Perkins's trial counsel attempted to introduce proof of Mr. Johnson's addled state on the night in question for the purpose of showing that his trial testimony should not be believed. In a remarkable example of overreaching by the circuit court, this effort was thwarted. At Mr. Perkins's trial, Mr. Groce was his defense counsel and Ms. Corbin was the prosecutor.

8

| | |
|---|---|
| THE COURT: | Defense Nos. 6, 7, 8, 9, 10 and 11. |
| MR. GROCE: | Obviously, you know, it's an exception to the hearsay rule, is how I'm trying to get them in, Your Honor. I'm sure you knew that before I did. |
| MS. CORBIN: | Your Honor, the State would like to inquire of Mr. Groce what is his purpose of introducing? |
| MR. GROCE: | Your Honor, state of mind, state of mind of the witness that night. |
| MS. CORBIN: | The night he was shot in the hospital? |
| MR. GROCE: | Right, right, exactly. |
| MS. CORBIN: | I'm confused why-- |
| MR. GROCE: | He did not know what was going on is what the records will show. So I'm oversimplifying it, but he didn't know what was going on and I can question if he was really shot that night. |
| MS. CORBIN: | Objection. |
| THE COURT: | What are Exhibits 6, 7, 8, 9, 10 and 11? |
| MR. GROCE: | UAMS business records showing his conduct, attitude on the night of the shooting. |
| THE COURT: | Are they medical records from the witness's chart at UAMS on the night of the shooting? |
| MR. GROCE: | Yes, Your Honor. |
| THE COURT: | And do you desire to introduce those medical records to show that the witness was not truthful about his state or about his consciousness or his lucidity? |
| MR. GROCE: | Not the proof, but to prove his actual state that night, not to impeach him but to prove what state he was in that night. |
| THE COURT: | How is that relevant? |

MR. GROCE:       Well, Your Honor, my client has been charged with a crime on that night and I'm trying to establish that Mr. Johnson wasn't in a state of mind to accuse anyone of anything because he was so confused on drugs, messed up. His conduct—he's schizophrenic, paranoia. He's got mental illness and he can explain it.

THE COURT:       None of that is relevant to whether or not a battery occurred.

MR. GROCE:       Well--

THE COURT:       None of that makes it more likely than not--that's the test of relevancy--that a battery occurred and that's the threshold, Mr. Groce, that you have to surmount in order to get Defendant's Exhibit 6, 7, 8, 9 and 10 admitted.

MR. GROCE:       And 12, Your Honor.

THE COURT:       Court is going to sustain State's objection to Defendant's Exhibit 6, 7, 8, 9, 10, 11and 12.

MR. GROCE:       Your Honor, can I ask questions from these reports summarized and see what his response is?

THE COURT:       Well, let's see what the question is.

MR. GROCE:       I'm going to ask him if on the night that he was brought in or a few days later on the11th he accused the UAMS of stealing his keys and his money. That's the first one.

THE COURT:       Is there an objection or not?

MS. CORBIN:       Yes, Your Honor.

THE COURT:       I wasn't telling you to object.

MS. CORBIN:       No, Your Honor. There is an objection to relevance.

THE COURT:       What is the objection? Relevancy?

MS. CORBIN:       Yes, Your Honor.

THE COURT:       Sustained.

MR. GROCE:        Move on, Your Honor?

THE COURT:        Yes, sir.

MR. GROCE:        7 is the question I wanted to ask him about his psychiatric history, you know.

MS. CORBIN:       Objection, relevance.

THE COURT:        Let's hear what the question is. What's your question?

MR. GROCE:        You allegedly had a psychiatry–history of psychiatry. Can you tell us what that's all about?

[MR. JOHNSON]:    No, I can't remember.

MS. CORBIN:       Object.

THE COURT:        Sustained.

MR. GROCE:        No. 8, you were incoherent when you went in.

MR. GROCE:        And obviously, I put that to the fact he was incoherent in the hospital. How could he report my client supposedly shot him?

MS. CORBIN:       Objection again, Your Honor.

THE COURT:        Sustained.

MR. GROCE:        Defendant's 9, it says he's paranoid schizophrenic. I obviously jump into that and find out can he tell the truth or not? Your turn.

MS. CORBIN:       Objection, relevance.

THE COURT:        Sustained.

MR. GROCE:        And Defendant's Exhibit No. 8, it says suspect underlying mental illness. I wanted to know if that affected what he did that night.

THE COURT:        I'm waiting.

MS. CORBIN:       I'm sorry. Objection; sustained.

THE COURT:        No.

11

| | |
|---|---|
| MS. CORBIN: | I mean objection. I apologize, Your Honor. I apologize. |
| THE COURT: | Relevancy objection sustained. |
| MR. GROCE: | And Defendant's Exhibit No. 11 is it talks about the medical records; does he have a history–it says he has a history of schizophrenic. I would like to find out if he can tell the truth as I said before. |
| MS. CORBIN: | Objection, relevance. |
| THE COURT: | Objection sustained. |
| MR. GROCE: | Defendant's Exhibit No. 12 is probably redundant, so I will withdr[a]w that. The others I would ask to be admitted. |
| THE COURT: | On the basis of relevancy, the objections are sustained. |
| MR. GROCE: | That's all I have. |

Contrary to the majority's assertion, the foregoing demonstrates that Mr. Perkins did make a proffer. However, even if this court were to find that Mr. Perkins did not make a proffer, a proffer is unnecessary when the substance of the evidence is apparent from the context within which it was offered. *Friday v. State*, 2018 Ark. 339, 561 S.W.3d 318. It is obvious from the context what Mr. Perkins's trial counsel was attempting to elicit on cross-examination: given the victim's documented mental state on the night of the shooting, he was incapable of forming the rational perception of the events that he testified to at trial.

As with any evidentiary ruling that is challenged on appeal, we review the allegations of error under an abuse-of-discretion standard. *Threadgill v. State*, 347 Ark. 986, 993, 69 S.W.3d 423, 428 (2002). We have repeatedly stated that an abuse of discretion occurs when the ruling is improvident, thoughtless, or made without due consideration. *Id*. In the case before us, the record indicates that the circuit court made no effort to examine the content

of the documents that Mr. Perkins proffered. Moreover, the basis for the circuit court's exclusion of the evidence was that "[n]one of that is relevant to whether or not a battery occurred." The record reflects a textbook example of a circuit court making an evidentiary ruling that was thoughtless and without due consideration.

I would reverse and remand this case for a new trial.

*Knutson Law Firm* by: *Gregg A. Knutson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.