Cite as 2022 Ark. 93

# SUPREME COURT OF ARKANSAS

No. CR-21-27

| | | |
|---|---|---|
| | | **Opinion Delivered:** April 21, 2022 |
| TACORI MACKRELL | | |
| | APPELLANT | |
| | | APPEAL FROM THE FAULKNER |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. 23CR-18-930] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE TROY BRASWELL, |
| | | JUDGE |
| | | |
| | | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

In October 2020, appellant Tacori Mackrell was convicted by a Faulkner County Circuit Court jury of capital murder, kidnapping, aggravated robbery, and theft of property. He was sentenced to consecutive sentences of life imprisonment, 360 months' imprisonment, 480 months' imprisonment, and 60 months' imprisonment. On appeal, Mackrell argues that the circuit court should have granted (1) his proposed jury instructions regarding lack of criminal responsibility; (2) his motion to prohibit the State from introducing prejudicial photographs; (3) his motion to prevent the prosecution from claiming to represent "the people"; and (4) his motion for a mistrial when the prosecution told the jury that Mackrell never once said he was sorry. Because this case involves a sentence of life imprisonment, jurisdiction is properly in this court pursuant to Arkansas Supreme Court Rule 1–2(a)(2). We affirm.

Because Mackrell does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary. On July 7, 2018, Mackrell and his cousin, Robert Smith,

traveled with Mackrell's aunt from Pine Bluff to Conway. Mackrell testified that on the day in question, he smoked PCP and marijuana. While waiting on his aunt to play bingo, Mackrell and Smith drove her vehicle over to Conway Commons where Mackrell saw the victim, Elvia Fragstein. He testified that, when "I seen Ms. Fragstein, we had said, well we might as well get us one." Mackrell testified that when Fragstein entered her car, he entered the driver's-side back seat. Mackrell testified that he could not recall what was said but could imagine that he said "give me the car and . . . I can't remember exact words but I know she probably said no. So that's when I took it upon myself to hit her upside the head." After Mackrell hit Fragstein with his fist "she kind of balled up and that's when I leaned between the . . . head rest . . . and uh, grabbed her in a choke lock." Mackrell testified that as he was bringing her to the back seat, she struggled and then he felt her body go limp. Mackrell testified that after tying Fragstein up with belts, he struck her with his fist. Mackrell and Smith then traveled in Fragstein's vehicle to Pine Bluff. Mackrell decided to dump Fragstein's body, who had not moved or made a sound since they left Conway, on farmland outside of Pine Bluff. They hid Fragstein's vehicle behind a house belonging to a friend of Smith's sister.

Fragstein's decomposing body was discovered in a ditch in rural Jefferson County on July 11, 2018. Dr. Steven Erickson, deputy chief medical examiner at the Arkansas State Crime Laboratory, testified that Fragstein was identified through her dental records. Dr. Erickson testified that Fragstein's body was subject to animal predation and that she "had extensive active insect larva infestation on her body. " Dr. Erickson testified that Fragstein had several broken ribs and had "crushing compressive neck trauma." He explained that Fragstein's death was caused by "a multifactorial, prolonged, severe assault."

Mackrell was convicted and sentenced as set forth above and now appeals.

# I. *Jury Instructions*

For his first point on appeal, Mackrell argues that the circuit court abused its discretion in refusing his proposed jury instructions, AMI Crim. 2d 609 and 610, regarding lack of criminal responsibility. A circuit court's ruling on whether to submit a jury instruction will not be reversed absent an abuse of discretion. *Grillot v. State*, 353 Ark. 294, 318, 107 S.W.3d 136, 150 (2003). In reviewing the propriety of giving a jury instruction, the issue is not one of sufficiency; rather, the issue is whether the slightest evidence supports the instruction. *Id.* at 320, 107 S.W.3d at 152.

Mackrell sought to invoke the affirmative defense of lack of criminal responsibility pursuant to Ark. Code Ann. § 5-2-312 (Supp. 2017). Section 5-2-301(6) (Supp. 2017) states that

> "[l]lack of criminal responsibility" means that due to a mental disease or defect a defendant lacked the capacity at the time of the alleged offense to either:
>
> (A) Appreciate the criminality of his or her conduct; or
>
> (B) Conform his or her conduct to the requirements of the law[.]

Section 5-2-301(7)(A) provides that

> "[m]ental disease or defect" means a:
>
>     (i) Substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life;
>
>     (ii) State of significantly subaverage general intellectual functioning existing concurrently with a defect of adaptive behavior that developed during the developmental period; or
>
>     (iii) Significant impairment in cognitive functioning acquired as a direct consequence of a brain injury or resulting from a progressively deteriorating neurological condition.

(B) As used in the Arkansas Criminal Code, "mental disease or defect" does not include an abnormality manifested only by:

(i) Repeated criminal or otherwise antisocial conduct;

(ii) Continuous or noncontinuous periods of intoxication, as defined in § 5-2-207(b)(1), caused by a substance such as alcohol or a drug; or

(iii) Dependence upon or addiction to any substance such as alcohol or a drug[.]

Relying on AMI Crim. 2d 609, Lack of Criminal Responsibility Due to Mental Disease or Defect, Mackrell proffered the following jury instruction:

Tacori Mackrell asserts the affirmative defense of lack of criminal responsibility due to mental disease or defect. If, after considering all the evidence, you are convinced beyond a reasonable doubt that [Mackrell] engaged in the conduct alleged to constitute the offenses, you should then consider the defense of lack of criminal responsibility.

A person is not criminally responsible for his conduct if at the time of that conduct, as a result of mental disease or mental defect, he lacked the capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

Tacori Mackrell has the burden of proving the defense by a preponderance of the evidence, unless the defense is so proved by other evidence in the case. "Preponderance of the evidence" means the greater weight of evidence. The greater weight of evidence is not necessarily established by the greater number of witnesses testifying to any fact or state of facts. It is the evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If the evidence with regard to this defense appears equally balanced, or if you cannot say upon which side it weighs heavier, then the defense has not been established.

If you find that this defense has been established then you must find Tacori Mackrell not guilty on the ground of lack of criminal responsibility. Whatever may be your finding as to this defense, you are reminded that the state still has the burden of establishing the guilt of Tacori Mackrell upon the whole case beyond a reasonable doubt.

If you find Tacori Mackrell not guilty on the ground of lack of criminal responsibility, the court will conduct a hearing. If the court determines that he is no longer affected by mental disease or defect, the court will immediately

discharge him. If the court determines that he remains affected by mental disease or defect, the court will order the defendant committed to the custody of the Department of Health and Human Services for an examination by a psychiatrist or licensed psychologist. Tacori Mackrell will not be released from custody unless it is determined that his release would not create a substantial risk of bodily injury to another person or serious damage to property of another person.

Definitions

"Intoxication is a disturbance of a person's mental or physical capacities as a result of taking alcohol or drugs or other substances into the body.

"Lack of criminal responsibility" means that due to a mental disease or defect a defendant lacked the capacity at the time of the alleged offense to either:

(A) appreciate the criminality of his conduct; or

(B) conform his conduct to the requirements of the law.

"Mental disease or defect" refers to (a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life) (or) (having a state of significantly subaverage general intellectual functioning existing concurrently with defects of adaptive behavior which developed during the developmental period) (or) (a significant impairment in cognitive functioning acquired as a direct consequence of a brain injury or resulting from a progressively deteriorating neurological condition). "Mental disease or defect" does not include (an abnormality manifested only by repeated criminal or otherwise antisocial conduct) (an abnormality manifested only by continuous or noncontinuous periods of intoxication caused by substances such as alcohol or drugs) (an abnormality manifested only by dependence upon or addiction to any substance such as alcohol or drugs).

Mackrell also proffered AMI Crim. 2d 610, Effect of Mental Disease or Defect on

Mental State:

If you find that the defense of lack of criminal responsibility due to mental disease or defect has not been established, evidence that Tacori Mackrell suffered from a mental disease or defect may still be considered by you in determining whether he had the required mental state to commit the offense charged or a lesser included offense.

The circuit court denied Mackrell's request for these jury instructions and explained,

5

Mental disease or defect is an affirmative defense and the burden rest[s] upon the . . . Defendant to prove that at the time the Defendant engaged in the conduct charged, he or she lacked the capacity to conform his or her conduct to the requirements of the law or to the appropriate criminality of his or her conduct. . . . . Just like the Circuit Court in the *Cage* case, we don't have anything in the record from the professionals or expert witnesses or anyone that testified that the Defendant had a mental disease or defect at the time of the occurrence. This Court is not allowed to speculate. This Court must rely upon evidence in the record. And as we speak, it is not in the record that this Defendant at the time of the occurrence was experiencing any mental disease or defect that would have rendered him incapable to appreciate the criminality of his conduct or reforming his conduct to that which is expected of by the law. In fact, I believe the doctors testified that it was just the opposite. Therefore, the Court will deny the Defendant's motion to AMC second 609, and subsequent 610 be submitted as jury instructions.

Mackrell argues that the circuit court abused its discretion in refusing to allow proffered jury instructions AMI Crim. 2d 609 and 610. Specifically, Mackrell argues that because there was testimony at trial that he was suffering from a severe conduct disorder—which affects one's impulse control and maturity—the jury was entitled to credit such testimony should it have chosen to do so. Mackrell contends that the court's refusal to give his proffered instructions violated his federal and state constitutional right to present a defense.

With regard to Mackrell's alleged lack of criminal responsibility, Dr. Melissa Dannacher-Wright, an Arkansas State Hospital forensic psychologist, testified that as a forensic evaluator she conducts court-ordered evaluations, including the criminal-responsibility exam. When conducting a criminal-responsibility evaluation, she begins with the legal file regarding the alleged offense itself and any records concerning the individual. She then begins with a history interview where she addresses the individual's educational, occupational, social, and family history. She asks her subject to tell her their account of the alleged offense. Specifically, she asks "them a lot of questions about what they were thinking, feeling, what they could remember" and their "motivation, just anything and everything I can think of pertaining to the

6

crime." Dr. Dannacher-Wright testified that she interviewed Mackrell on two occasions. She testified that Mackrell reported several traumatic events in his life: (1) he was born with crack cocaine in his system, (2) he witnessed someone get shot in the face, (3) he experienced the death of his sister when he was ten years old, and (4) he has a history of involvement with the juvenile court system. Under the Diagnostic and Statistical Manual of Mental Disorders, Version V, Dr. Dannacher-Wright diagnosed Mackrell with conduct disorder, cannabis use disorder, and PCP use disorder. Dr. Dannacher-Wright testified that Mackrell did not lack the ability to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law. Further, she opined that Mackrell does not lack the capacity to follow the rules, but rather, "[i]t's a choice not to follow the rules." Dr. Dannacher-Wright also testified that despite Mackrell's diagnoses, he does not have a mental disease or defect and that he was criminally responsible within the definition of Arkansas law.

Dr. Brian Rush Simpson, a psychiatrist, testified that he was retained by the defense to evaluate Mackrell. Dr. Simpson testified that he "diagnosed [Mackrell] with essentially the same things as Dr. Dannacher[-Wright], conduct disorder, followed by cannabis use disorder and PCP use disorder." He explained that an individual with conduct disorder is characterized by engaging in criminal activity, truancy, drug usage, breaking curfew, and "a persistent inability to follow rules or conform their behavior to what would be normal for someone that age." Dr. Simpson testified that Mackrell does not have any mental disease or mental defect that would impact his ability to conform his actions to the law or appreciate the criminality of his conduct.

As set forth above, both Dr. Dannacher-Wright and Dr. Simpson testified about Mackrell's conduct-disorder diagnosis and drug-use disorders. However, they both testified that Mackrell does not have a mental disease or defect. Based on their testimony and the fact that

7

Mackrell failed to provide alternative evidence establishing a mental disease or defect, we hold that the circuit court did not abuse its discretion in refusing to give the AMI Crim. 2d 609 and 610 instructions. Accordingly, we affirm the circuit court on this point.

## II. *Photographs*

For his second point on appeal, Mackrell argues that the circuit court abused its discretion by admitting prejudicial photographs. Mackrell takes issue with the introduction of State's exhibits 13 and 59–69, all of which involved "stingingly grotesque photographs of Mrs. Fragstein's remains." As he did below, Mackrell argues on appeal that the photographs should have been excluded pursuant to Rule 403 of the Arkansas Rules of Evidence, asserting that the evidence was more prejudicial than probative.

The admission of photographs is a matter left to the circuit court's sound discretion, which we will not reverse absent an abuse of discretion. *Collins v. State*, 2020 Ark. 371, at 6, 610 S.W.3d 653, 657. Photographs are generally admissible if they help explain testimony. *Id*. The mere fact that a photograph is inflammatory or cumulative is not, standing alone, sufficient reason to exclude it. *Id*. Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: (1) by shedding light on some issue; (2) by proving a necessary element of the case; (3) by enabling a witness to testify more effectively; (4) by corroborating testimony; or (5) by enabling jurors to better understand the testimony. *Evans v. State*, 2015 Ark. 240, at 4, 464 S.W.3d 916, 918. Other acceptable purposes include showing the condition of the victim's body, the probable type or location of the injuries, and the position in which the body was discovered. *Id*., 464 S.W.3d at 919. Finally, we have explained that if a photograph serves no valid purpose and can only result in inflaming the passions of the jury, it is inadmissible. *Marcyniuk v. State*, 2010 Ark. 257, at 13, 373 S.W.3d 243, 252.

Here, State's exhibit 13 was introduced during the testimony of Terry Wingard, a deputy with the Jefferson County Sheriff's Office. Deputy Wingard testified that he observed Fragstein's body in the ditch before it was moved by the coroner. State's exhibit 13 was a photograph of the upper body of Fragstein with her shirt pulled up and her face decomposed and covered in fly larvae. In addition to arguing that the photograph was more prejudicial than probative, Mackrell argued that it was a "sufficiently grotesque picture" and that Deputy Wingard could describe the scene without a photograph. The State responded that multiple photographs were taken but that this picture is important to show the condition of the body, the decomposing nature of the body, where the body was located, and how the body was treated by Mackrell.

State's exhibits 59–69 were introduced through the testimony of Dr. Steven Erickson. These exhibits are close-up autopsy photographs of Fragstein's body. Mackrell argued that the photographs were more prejudicial than probative and that the State could rely on x-rays and diagrams instead of the "gory and grotesque photographs." The State responded that the photographs would assist the jury in understanding Dr. Erickson's testimony and were important to explain the injuries that Fragstein had sustained.

On review, we do not find merit in Mackrell's argument that the photographs were more prejudicial than probative. Exhibit 13 served to corroborate Deputy Wingard's testimony and to explain where and in what condition Fragstein's body was discovered. As to Exhibits 59–69, these photographs corroborated Dr. Erickson's testimony and were helpful in explaining Fragstein's injuries. Accordingly, we hold that the circuit court did not abuse its discretion in admitting the photographs at issue, and we affirm.

### III. *Prosecution's Claim to Represent "The People"*

For his third point on appeal, Mackrell argues that the circuit court abused its discretion when it denied his motion in limine, which sought to prevent the prosecution from claiming to represent "the people." We review denials of motions in limine for an abuse of discretion. *Lane v. State*, 2017 Ark. 34, 513 S.W.3d 230. Specifically, Mackrell argues that it is the jury, not the prosecutor, who represent "the people." Mackrell argues that this claim is in derogation of Rule 1.5 of the Arkansas Rules of Criminal Procedure, which states that "[a]ll prosecutions for violations of the criminal laws of this state shall be in the name of the State of Arkansas." To support his position, Mackrell relies on *Taylor v. Louisiana*, in which the United States Supreme Court stated, "[W]e accept the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment and are convinced that the requirement has solid foundation. The purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps over-conditioned or biased response of a judge." 419 U.S. 522, 530 (1975). However, Mackrell acknowledged below that his reliance on *Taylor* is "just a representative quote showing what the role of the jury was . . . that they are . . . essential representatives of the people." Finally, Mackrell notes that a ruling in his favor, in this case, will require this court to overrule certain prior cases, including *Pickens v. State*, 292 Ark. 362, 730 S.W.2d 230 (1987).

As Mackrell points out, we rejected this argument in *Pickens*. In that case, Pickens contended that the prosecutor erred in referring to himself as representing "the people." *Id*. at 371–72, 730 S.W.2d at 236. We disagreed and explained that Pickens submitted no case authority and little argument to convince us that this was an error. *Id*. at 372, 730 S.W.2d at

236. Further, the State points out that we also rejected this claim in *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996). In that case, Kemp argued that the circuit court erred in refusing to enjoin the prosecutor from claiming to represent "the people." *Id.* at 199, 919 S.W.2d at 953. In rejecting this assertion, we explained that Kemp failed to cite authority or make a convincing argument in his assertion of error. We further explained that "we can see no prejudice in the trial court's failure to so enjoin the prosecutor, and will not reverse in the absence of prejudice." *Id.*, 919 S.W.2d at 953.

As in *Pickens* and *Kemp*, we hold that Mackrell failed to make a convincing argument, and we decline his invitation to overrule these cases. As stated in *Kemp*, we will not reverse a circuit court on this issue in the absence of prejudice. Here, Mackrell has failed to demonstrate prejudice because the prosecution mentioned that it represented "the people" only one time during the trial. Accordingly, we affirm the circuit court's denial of Mackrell's motion.

## IV. *Lack of Remorse*

For his final point on appeal, Mackrell argues that the circuit court should have granted his motion for a mistrial when the prosecution told the jury that Mackrell never once said he was sorry. "[A] mistrial is a drastic remedy and should be declared when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when it cannot be cured by an instruction." *Travis v. State*, 371 Ark. 621, 625, 269 S.W.3d 341, 344 (2007). The grant or denial of a motion for mistrial lies within the sound discretion of the circuit court, and the exercise of that discretion should not be disturbed on appeal unless an abuse of discretion or manifest prejudice to the complaining party is shown. *King v. State*, 298 Ark. 476, 769 S.W.2d 407 (1989). Additionally, we have held that "an admonition will usually remove the effect of a prejudicial statement unless the statement is so patently inflammatory that justice could not be

served by continuing the trial. *Kimble v. State*, 331 Ark. 155, 959 S.W.2d 43 (1998)." *Williams v. State*, 2011 Ark. 432, at 8, 385 S.W.3d 157, 162.

The following colloquy occurred during closing argument in the first phase of trial:

[PROSECUTOR]: And here comes the most chilling part. The most chilling thing that was never said in four statements and the testimony and I can't remember how long he was on the stand, I think over -- well over an hour. He never said he was sorry.

[DEFENSE COUNSEL]: Approach.

(WHEREUPON, a bench conference was had outside the hearing of the jury.)

[DEFENSE COUNSEL]: Your Honor, that's totally improper and we move for a mistrial. There is no basis for saying that because they were objecting to various things that Mr. Mackrell was saying and remorse, the question -- the issue was -- the issue is what did he commit and what circumstances did he commit. Remorse is a matter for penalty, not guilt. We move for a mistrial. Without waiving that because we don't think an admonition is sufficient, but under the rules we're required to ask for an admonition as a back up, but we -- but remorse is simply not relevant here and there are plenty of cases that forbid a Defendant from saying he's remorseful as part of a -- as part of the testimony in the guilt phase.

[PROSECUTOR]: Judge, the circumstances are manifesting extreme indifference to the value of human life. Throughout all of this certainly is lack of remorse, the indication of lack of remorse throughout all of the statements show that there was a manifest extreme indifference to the value of life of human life. And in all of the statements, all of the statements were about him. That he made statements about what was happening to him throughout the process, and concern for himself. And he never showed any concern about her. And the point is that the statements indicate that it shows an extreme -- manifesting extreme indifference to the value of human life. When he's talking to the police about, you know, I can do a little time. I can do this, I can

12

| | |
|---|---|
| | do, you know how much time am I going to get, you know, and changes his responsibilities. |
| [DEFENSE COUNSEL]: | Your Honor, the relevant – he [is] conflating the circumstances of the offense at the time with something later. Now we operated under compliance with the law, which was that that type of thing is inadmissible in the guilt phase of a trial. And now he's trying to penalize Mr. Mackrell for complying with the law and his lawyers complying with the law in his testimony. This is totally improper and it's so prejudicial that an admonition cannot rectify the problem. We again move for a mistrial and pursuant to procedure and without waiving the motion for a mistrial, we move for an admonition that the jury is to disregard it -- that remark. Although we believe an admonition is not sufficient. |

The circuit court took the motion under advisement and admonished the jury that arguments of counsel are not evidence. Then, during the defense's closing argument, defense counsel addressed the lack-of-remorse issue and explained that he had instructed Mackrell not to express remorse. After closing arguments, the issue was again addressed in chambers, and the circuit court denied Mackrell's motion for mistrial.

On appeal, Mackrell argues that bifurcation of trials into separate stages often has the effect of making certain evidence admissible only in the penalty phase of trial. He asserts that his emotions and present-day perspective on his conduct is a penalty issue. Mackrell explains that the defense assumed that the remorse issue would be objected to if explored in the guilt phase—a point made clear when defense counsel stated in closing argument that Mackrell had been instructed to stay away from the remorse issue at that phase rather than draw an objection. Mackrell contends that the State forewent cross-examination on this point, thus confirming the defense's understanding that remorse was inadmissible at this stage. Relying on *Johnson v. State*, 2013 Ark. 494, 430 S.W.3d 755, and *Howard v. State*, 348 Ark. 471, 179 S.W.3d 273 (2002),

Mackrell asserts that the circuit court should have granted his motion for mistrial. However, neither *Johnson* nor *Howard* is on point because those cases addressed a prosecutor's alleged improper comment on the defendant's failure to testify. Thus, both cases are distinguishable from the present case because Mackrell did testify at trial.

Next, Mackrell relies on *Lard v. State*, 2014 Ark. 1, 431 S.W.3d 249, asserting that in *Lard*, the court permitted testimony and examination about lack of remorse during the guilt-innocence phase when Lard put his mental state at issue. Mackrell contends that the distinction between the present case and *Lard* is that, here, the prosecutor was silent regarding remorse during examination but later, during argument, made a comment about lack of remorse. Mackrell contends that he was extremely prejudiced by the prosecutor's improper argument and that he is therefore entitled to reversal and remand on this point. However, a close review of *Lard* demonstrates that we did not hold that the prosecutor is required to question the defendant about remorse before addressing the issue during closing arguments. Instead, as the State points out, "[t]here is no error when comments made during closing arguments are inferable from testimony at trial." *Lowery v. State*, 2021 Ark. 97, at 9, 621 S.W.3d 140, 147 (citing *Williams v. State*, 2019 Ark. 289, 586 S.W.3d 148). Here, Mackrell testified at length during the guilt-innocence phase of trial. Thus, Mackrell's lack of remorse could be inferred from his testimony detailing the death of Fragstein and his subsequent decision to dump her body in a ditch. As stated above, a mistrial is a drastic remedy and should be declared when there has been an error so prejudicial that justice cannot be served by continuing the trial. *Travis*, *supra*. No such prejudicial error has occurred in this case. Moreover, the circuit court admonished the jury that arguments of counsel are not evidence. Accordingly, we affirm.

Pursuant to Arkansas Supreme Court Rule 4–3(a), the record has been reviewed for all objections, motions, and requests that were decided adversely to Mackrell, and no prejudicial error was found.

Affirmed.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, and *Ashleigh N. Dyer*; and *Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen.; and *Amy Collis*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission of the Bar of the Supreme Court under the Supervision of *Darnisa Evans Johnson*, Dep. Att'y Gen., for appellee.