Michael CLAY *v.* STATE of Arkansas

CR 95-1145                                                    919 S.W.2d 190

Supreme Court of Arkansas
Opinion delivered March 25, 1996

*Bart E. Ziegenhorn*, for appellant.

*Winston Bryant,* Att'y Gen., by: *Kent G. Holt,* Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Michael Clay was convicted of capital murder and sentenced to life imprisonment without parole. We reversed the conviction and remanded the case. *Clay* v. *State,* 318 Ark. 122, 883 S.W.2d 822 (1994). He was retried, convicted, and sentenced to life imprisonment without parole for capital felony murder. Mr. Clay argues two points of appeal. He first contends the evidence was insufficient to establish the allegation that he murdered Glynda Wallace in the course of committing a felony as required for conviction pursuant to Ark. Code Ann. § 5-10-101. We hold the evidence was sufficient. His second point is that it was error for the Trial Court to admit evidence of a ballistics test because the State had not properly proved the weapon to which the testimony related belonged to him and because the weapon could not be produced at the trial. We hold the evidence connecting the weapon to Mr. Clay was sufficient. We affirm the judgment.

The State's evidence in the second trial showed these facts. On August 14, 1990, the body of Glynda Wallace was found near Macedonia Road in Gilmore. Ms. Wallace died as the result of a gunshot wound. On August 20, 1990, the burned shell of Ms. Wallace's Pontiac was located in a rice field.

The Crittenden County Sheriff's Department received an anonymous tip that Michael Clay was seen driving the victim's car. On Thursday, August 23, 1990, Officer John Murray of the Crittenden County Sheriff's Department asked Mr. Clay to come in for questioning concerning the theft of the victim's vehicle. Mr. Clay voluntarily accompanied Officer Murray to the Sheriff's Department. He waived his rights and said the car belonged to his friend, Leslie Shaw. Later that evening Mr. Clay was detained again by the Sheriff's Department. He again waived his rights and made a taped statement in which he claimed that he bought the car from his uncle. At that point, Mr. Clay was charged with theft by receiving of Ms. Wallace's vehicle.

After being charged, Mr. Clay escaped from the jail and was not apprehended until Saturday, August 25, 1990. On that date, he was questioned further regarding his possession of the vehicle and the murder of Ms. Wallace. He waived his rights and made another taped statement in which he claimed he was in the car when Ms.

Wallace was murdered by his friend Robert who later gave him the car.

In his first two taped statements, Mr. Clay stated that he attempted to have the vehicle inspected at a service station in Turrell, Arkansas. Dale Doss, a service-station attendant, later testified that he remembered conducting an inspection of a Pontiac Grand Am at Mr. Clay's request on August 18, 1990.

Mr. Clay was held overnight and was questioned again on the following evening, Sunday, August 26, 1990. At that time, Mr. Clay waived his rights again and gave a taped statement in which he stated:

> I was walking down to Gilmore. I seen this lady had a flat. She needed some help. I helped her. I asked her to give me a ride. She said no. I got my gun out, and I asked her to give me a ride. She gave me a ride. We went on down the road. She said I would have to jump out before she stopped, because she ain't stopping, she ain't going to Gilmore. I went to jump out, and next thing I know my gun went off.

Mr. Clay then stated that his friend, Robert Turner, burned the car.

### 1. Evidence of underlying felony

Mr. Clay made timely motions for a directed verdict on the ground that the prosecution failed to prove capital felony murder because there was no substantial evidence that Ms. Wallace was murdered in the course of and in furtherance of a felony. He contends the motions should have been granted because the State's proof indicated only that the robbery was an "afterthought" to the murder, and not its motivating purpose.

■ In support of his argument, Mr. Clay relies on the fact that the statements that were introduced during his second trial, while contradictory, indicate only that the shooting was accidental, and not in the furtherance of a robbery. He argues, citing *Grigsby* v. *State*, 260 Ark. 499, 542 S.W.2d 275 (1976), that his possession of Ms. Wallace's vehicle *after* the homicide does not necessarily indicate that he is guilty of capital felony murder. We rejected a similar claim in the *Grigsby* case and said:

> Appellant argues that his motion for directed verdict and reduction of his charge to one of first degree murder

should have been granted. This argument is based upon his contention that the only evidence about what happened at the time of the killing showed that he took Childers' property after the killing, and that there is no evidence that this taking was anything other than an afterthought. For us to rule as a matter of law that the robbery was an afterthought would require that portions of Grigsby's statement, which was mostly exculpatory, be taken at face value. If indeed Grigsby murdered Childers, and the killing was not accidental, it would be difficult to believe that anything other than robbery motivated the killing. Suffice it to say that the circumstantial evidence here furnishes adequate support for the jury's finding that Childers was killed in the perpetration of a robbery. See *Upton v. State,* 257 Ark. 424, 516 S.W.2d 904.

See also *Pomerleau v. State,* 303 Ark. 275, 795 S.W.2d 929 (1990), and *Owens v. State,* 283 Ark. 327, 675 S.W.2d 834 (1984), in which we said the State need only prove that the robbery and the murder were parts of the same transaction, or occurred within the same brief interval, to support a conviction of capital felony murder. In such cases, we do not, in the language of the *Grigsby* decision, require the State to show a "strict causal relationship between the felony and the homicide." Mr. Clay's statement, when combined with his subsequent conduct with respect to the Ms. Wallace's automobile, was sufficient to show the murder and robbery occurred together.

### 2. Ballistics evidence

James Funderburg, a drug task force officer who assisted in the investigation of Ms. Wallace's death, testified he went to the home of Mr. Clay's father's, Ishmael Clay. He advised Ishmael Clay that "if he had any knowledge of where his son was and had any knowledge of the weapon that was used" it would be to his son's benefit to surrender. John Murray, a sheriff's department investigator, testified that Ishmael Clay brought to the sheriff's department a .25 caliber automatic pistol with the serial number MK18579.

Robert Turner, the friend Mr. Clay at one point accused of having participated in the murder, testified he saw Mr. Clay with a .25 caliber pistol a few days after the murder.

Officer Murray said he gave the weapon he had received from Ishmael Clay to Officer Mickey Strayhorn, who testified that he

received a .25 caliber, semi-automatic, Excam pistol, model GT27, serial number MK18579, and that he locked it in an evidence locker until he could deliver it to the State Crime Lab in Little Rock.

Ron Andrejack, a ballistics examiner with the State Crime Laboratory, testified the gun he received from the Sheriff's Department was an Excam, Model GT27, blue semi-automatic pistol bearing the serial number MK18579. Mr. Andrejack stated, based upon tests he conducted, that weapon fired a bullet that was recovered from Ms. Wallace's body.

■ Although Ishmael Clay did not testify as to his acquisition of the pistol, the fact that he brought the pistol to the sheriff's department apparently after having been asked about his son, the killing, and "a weapon," was sufficient to allow the jury to consider it. In view of the solid chain of evidence between Ishmael Clay and Mr. Andrejack, it was insignificant that the State was unable to produce the pistol at the trial. The issue is whether the Trial Court abused its discretion in admitting the evidence. *Hubbard* v. *State*, 306 Ark. 153, 812 S.W.2d 107 (1991). No abuse occurred.

The record of the trial has been reviewed in accordance with Arkansas Supreme Court Rule 4-3(h). No errors resulting in rulings prejudicial to Mr. Clay have been found.

Affirmed.