2010 Ark. 174

**Paul Anthony NORRIS, Appellant,**

**v.**

**STATE of Arkansas, Appellee.**

No. 09–1016.

Supreme Court of Arkansas.

April 15, 2010.

Rehearing Denied May 20, 2010.

The Law Offices of J. Brent Standridge, P.A., by: J. Brent Standridge, Benton, for appellant.

Dustin McDaniel, Att'y Gen., by: Laura Shue, Ass't Att'y Gen., for appellee.

ELANA CUNNINGHAM WILLS, Justice.

A Saline County jury convicted appellant Paul Anthony Norris of capital murder, two counts of aggravated robbery, and first-degree battery.[1] The trial court sentenced Norris to life imprisonment without parole for the capital-murder conviction, twenty-five years on each aggravated robbery charge, and twenty years for first-degree battery. Norris argues on appeal that the trial court erred in denying his motions for a directed verdict on the capital murder and aggravated-robbery charges, and in refusing to submit his proffered jury instructions on imperfect self-defense and negligent homicide.

Norris first argues that the circuit court erred in denying his motion for a directed verdict on charges of capital murder and aggravated robbery. This court treats a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). The appellate court reviews the evidence in the light most

---

1. With respect to capital murder, the State charged Norris with felony murder under Ark.Code Ann. § 5–10–101(a)(1) based on the aggravated robbery, and alternatively charged Norris with premeditated and deliberated murder under Ark.Code Ann. § 5–10–101(a)(4).

favorable to the State and considers only the evidence that supports the verdict. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). This court affirms a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence—either direct or circumstantial—that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001).

Circumstantial evidence may constitute substantial evidence to support a conviction. *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001). The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* The question of whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to decide. *Id.* Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.*

A person commits capital murder if acting alone or with one or more other persons, he commits or attempts to commit aggravated robbery "and in the course of and in furtherance of" aggravated robbery "or in immediate flight" therefrom, the "person or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life." Ark.Code Ann. § 5–10–101(a)(1) (Supp.2007). Aggravated robbery occurs when a person "(1) [i]s armed with a deadly weapon or represents by word or conduct that he is so armed; or (2) [i]nflicts or attempts to inflict death or serious physical injury upon another person." Ark.Code Ann. § 5–12–103 (Repl.

2006). A person commits robbery by employing or threatening to immediately employ physical force upon another with the purpose of committing a felony or misdemeanor theft. Ark.Code Ann. § 5–12–102 (Repl.2006). The "[i]ntent to commit a robbery may be inferred from the facts and circumstances of a particular case." *Harper v. State*, 359 Ark. 142, 151, 194 S.W.3d 730, 735 (2004).

Review of the record reveals the following facts. Alex Ragan testified at trial that he and neighbor Derrick Kellems attempted to purchase marijuana on September 5, 2008. Ragan spoke with Charles Moore over the telephone, who directed Ragan to meet with an individual named "Creo." Ragan and Kellems later drove with Creo to a house where Creo went inside with Ragan's money to purchase marijuana but never returned. Kellems eventually went inside the house but failed to locate Creo.

Ragan then called Charles Moore, who told Ragan that he would get his "guys together" to help get the money back. To this end, Moore told Ragan to call appellant Norris. Ragan and Kellems drove to meet Norris, who was waiting outside his grandmother's house with an individual named Tim Jackson, and they subsequently picked up another friend of Norris, Justin Gatewood. Norris then directed Ragan to drive to an abandoned house. Upon arrival, Ragan, Norris, Jackson, and Gatewood went into the house through the front door, eventually exiting through the back in what Ragan believed at the time was a search for Creo; Kellems went directly around to the back of the house. Ragan testified that after he emerged from the house and stood next to Kellems, Norris approached from inside the house and suddenly delivered a single blow to Kellems's head with a two-by-four. Norris then struck Ragan in the head with the

two-by-four. Ragan stated that Norris's attack was unprovoked and a surprise, because they were "suppose[d] to be friends."

After receiving Norris's blow to his head, Ragan was attacked by Jackson and Gatewood while attempting to get to his car to make a call from his cell phone. Ragan testified that Gatewood punched him and demanded money from him, and that Norris then approached from the direction of the house and similarly demanded money after grabbing him. After he was punched several more times, Ragan testified that Norris, Jackson, and Gatewood began searching his car for money and told Ragan to "go help your buddy."

According to Ragan's testimony, Kellems was "stumbling around," had difficulty speaking, and "there was blood all over his face." As Ragan tried to assist Kellems to the car, Kellems lay down on a cushion and whispered for Ragan to go get help. Ragan drove home where his wife insisted he go to the hospital. Detectives arrived at the hospital and Ragan gave them directions to Kellems's location to the best of his knowledge. Benton Police Department Officer Jimmy Thompson located Kellems near the abandoned house and transported him to the hospital. Thompson's search of Kellems's person revealed neither a wallet nor a weapon. Although Ragan testified that Kellems had a "set of pliers or something whenever he was at the house that Creo stole the money," Ragan stated that he never saw Kellems with the Leatherman multi-tool in his hand at the abandoned house, nor did he see Kellems wield it at the abandoned house.

Kellems died on September 21, 2008, sixteen days after he was transported to the hospital. Forensic pathologist Dr. Stephen Erickson testified that Kellems died from complications resulting from trauma to the skull and brain and ruled the death a homicide. Dr. Erickson compared the force of the blow to Kellems's skull as the equivalent of someone "swinging for the fence."

Ragan later identified Norris as his and Kellems's assailant from a photographic line-up. Investigation by the Benton Police Department indicated that Norris and/or his family once lived in the abandoned house. A two-by-four was found at the house along with various items belonging to Ragan and Kellems; their wallets, however, were not recovered.

Following his arrest, Norris provided a videotaped statement to the Benton Police Department in which he acknowledged that he was aware that Ragan and Kellems "had been robbed" earlier in the day, but got into Ragan's car ostensibly to help search for Creo. Norris told Benton police that he "was already kind of heated" when he got into the car and directed Ragan to drive to the abandoned house, and that after they arrived at the house "we was acting like we were looking for Creo." Further, Norris admitted to Benton police that he struck Kellems once with the two-by-four hard enough that "it sounded like it was somebody swinging a baseball bat."

■ Norris first argues that "the State failed to sustain its burden of proof under the felony-murder provision in that it was not shown that [he] caused the death of Kellems in the course of and in furtherance of an aggravated robbery." Viewing the evidence in the light most favorable to the State as the court must, there is sufficient evidence that Norris killed Kellems in the course and furtherance of a robbery. Although Norris asserts a lack of "nexus between the alleged murder of Kellems and any aggravated robbery," Ragan testified that after striking both victims, Norris grabbed him and demanded money. This

court, citing previous decisions, stated in *Clay v. State*, 324 Ark. 9, 12, 919 S.W.2d 190, 191–92 (1996) that

> the State need only prove that the robbery and the murder were parts of the same transaction, or occurred within the same brief interval, to support a conviction of capital felony murder. In such cases, we do not ... require the State to show a "strict causal relationship between the felony and the homicide."

Ragan's testimony concerning Norris's conduct in striking Kellems and subsequent demand for money from Ragan, combined with Norris's statement to police and other evidence described above, provided sufficient evidence of a "nexus" between the murder and the robbery.

Norris likewise challenges the sufficiency of the evidence to support the State's alternative charge of premeditated and deliberated capital murder under Ark. Code Ann. § 5–10–101(a)(4) (Repl.2006). However, because the State presented sufficient evidence supporting Norris's jury conviction for capital felony murder under § 5–10–101(a)(1) upon a general verdict, we will not consider the sufficiency of evidence supporting the alternative charge of premeditated and deliberated murder under § 5–10–101(a)(4). *Terry v. State*, 371 Ark. 50, 263 S.W.3d 528 (2007) (holding that, where the jury was instructed on charges of capital murder under both § 5–10–101(a)(1) and (a)(4) and rendered a general verdict of guilty on capital murder, the verdict could be affirmed if there was sufficient evidence supporting a conviction under either subsection (a)(1) or (a)(4), citing *Griffin v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991)).

For his second point on appeal, Norris argues that the circuit court erred in refusing his proffered jury instructions regarding imperfect self-defense and negligent homicide. Although the circuit court instructed the jury on the lesser-included offense of manslaughter and the defense of justification, it rejected the proffered instructions on imperfect self-defense and negligent homicide on the basis that neither were necessary nor appropriate. This court will not reverse a trial court's refusal to instruct a jury on a particular point of law absent abuse of discretion. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003).

Norris's proffered jury instruction for imperfect self-defense was taken verbatim from Ark.Code Ann. § 5–2–614(a) (Repl. 2006), which provides that

> [w]hen a person believes that the use of physical force is necessary for any purpose justifying that use of physical force under this subchapter but the person is reckless or negligent either in forming that belief or in employing an excessive degree of physical force, the justification afforded by this subchapter is unavailable in a prosecution for an offense for which recklessness or negligence suffices to establish a culpable mental state.

This court addressed a proffered imperfect self-defense jury instruction based on § 5–2–614 in *Kemp v. State*, 348 Ark. 750, 74 S.W.3d 224 (2002). There, the appellant asserted that his counsel's omission of a phrase from § 5–2–614 in the proffered imperfect self-defense instruction constituted ineffective assistance of counsel in the context of his petition for post-conviction relief. We noted the requisite conditions for an imperfect self-defense instruction as follows:

> We have held that there must be a rational basis in the evidence to warrant the giving of an instruction. *Allen v. State*, 326 Ark. 541, 932 S.W.2d 764 (1996). A party is entitled to an instruction on a defense if there is sufficient

evidence to raise a question of fact or if there is any supporting evidence for the instruction. *Yocum v. State*, 325 Ark. 180, 925 S.W.2d 385 (1996). Where the defendant has offered sufficient evidence to raise a question of fact concerning a defense, the instructions must fully and fairly declare the law applicable to that defense; however, there is no error in refusing to give a jury instruction where there is no basis in the evidence to support the giving of the instruction. *Id.*

A person may not use deadly physical force in self-defense if he knows that he can avoid the necessity of using that force with complete safety by retreating. *See* Ark.Code Ann. § 5–2–607(b)(1) (Repl.1997). Additionally, this defense is not applicable when one arms himself and goes to a place in anticipation that another will attack him. *See Girtman v. State*, 285 Ark. 13, 684 S.W.2d 806 (1985).

*Kemp*, 348 Ark. at 762, 74 S.W.3d at 230. We concluded that "there was no rational basis for the 'imperfect self-defense' instruction" in *Kemp* because the evidence showed that

> [a]lthough appellant had been drinking prior to the murders, there was testimony that appellant was not drunk. More significantly, we note that appellant left the residence, armed himself with a gun, returned to the residence, and opened fire upon entering the front door. Therefore, appellant could not rationally argue that he recklessly or negligently

formed the belief that the use of deadly force was necessary to protect himself. *Kemp*, 348 Ark. at 763, 74 S.W.3d at 230.

■ Similarly, in the present case there was no rational basis for the proffered imperfect self-defense instruction. The State's evidence and Norris's statement to police showed that Norris lured Ragan and Kellems to the abandoned house—knowing that Creo would not be found there—and that Norris's sudden attack was unprovoked and unanticipated. The only testimony or evidence supporting an assertion of imperfect self-defense was in Norris's self-serving[9] statements to police that Kellems wielded a knife at the abandoned house before Norris struck him with the two-by-four. This court has affirmed a trial court's refusal to submit a proffered jury instruction where the only basis for the instruction was the defendant's self-serving statements or testimony, contradicted by other witnesses. *See, e.g., Pollard v. State*, 2009 Ark. 434, 336 S.W.3d 866; *Morris v. State*, 351 Ark. 426, 94 S.W.3d 913 (2003).[2] Accordingly, the circuit court did not abuse its discretion in refusing to submit the imperfect self-defense instruction to the jury.

■ Likewise, the circuit court did not abuse its discretion in refusing to submit Norris's proffered negligent-homicide instruction to the jury because there was no rational basis for the instruction. "A person commits negligent homicide if he or she negligently causes the death of another person." Ark.Code Ann. § 5–10–

---

2. Norris states in his brief that in *Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753 (2001) we found "that the defendant presented a basis to assert imperfect self-defense such that a manslaughter instruction was warranted." *Harshaw* is inapplicable here. First—in contrast to the present case—in *Harshaw* there was evidence other than the appellant's own statements that provided a basis for a manslaugh-

ter instruction in that "[w]itnesses testified that [the victim] made threatening remarks and reached for something in his car immediately prior to the homicide." Second, the ultimate conclusion of *Harshaw* was that the jury should have been instructed as to manslaughter. Here, the circuit court here *did* instruct the jury on manslaughter, as well as justification.

105(b)(1). "Negligence" is defined under Ark.Code Ann. § 5–2–202(4) as follows:

(A) A person acts negligently with respect to attendant circumstances or a result of his or her conduct when the person should be aware of a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.

(B) The risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation considering the nature and purpose of the actor's conduct and the circumstances known to the actor.

Here, Norris stated to police that he swung the two-by-four "hard" at Kellems's head with enough force that is sounded like he was swinging a baseball bat. Thus, there was no evidence that Norris was unaware that his conduct, or the risk of his conduct, would result in Kellems's death.

In sum, the State presented sufficient evidence supporting Norris's jury-conviction for capital felony murder and the circuit court did not abuse its discretion in refusing to instruct the jury on imperfect self-defense and negligent homicide.

In accordance with Ark. Sup.Ct. R. 4–3(i), the record has been reviewed for all objections, motions, and requests made by either party that were decided adversely to Norris, and no prejudicial errors were found.

Affirmed.