Cite as 2023 Ark. 101

# SUPREME COURT OF ARKANSAS
**No.** CR–22–21

|  |  |
|---|---|
|  | **Opinion Delivered:** June 8, 2023 |
| STACY ANTHONY MITCHELL<br>APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CR-19-368] |
| V. |  |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE BRAD KARREN, JUDGE |
|  | AFFIRMED; COURT OF APPEALS' OPINION VACATED. |

**SHAWN A. WOMACK, Associate Justice**

On February 2, 2019, Stacy Mitchell stabbed Mark McCoy at JJ's Grill in Rogers. Mitchell was arrested the same day, and a jury convicted him on May 20, 2021, nearly two-and-a-half years later, of first-degree battery and failure to appear on a felony. Mitchell was sentenced to twenty-one years' imprisonment as an habitual offender. Mitchell appealed his conviction and sentence to the court of appeals, arguing there was insufficient evidence to support his conviction for first-degree battery and that the circuit court abused its discretion by denying his motion to substitute counsel. The court of appeals affirmed, and we granted Mitchell's petition for review. Because the circuit court did not abuse its discretion by denying Mitchell's motion to substitute counsel, and there was substantial evidence to support his conviction for first-degree battery, we affirm the circuit court's order and vacate the court of appeals' opinion.

## I. *Facts*

On May 20, 2021, a Benton County jury convicted Stacy Mitchell of first-degree battery and failure to appear.[1] This conviction followed Mitchell's request to substitute counsel, seeking to replace his appointed public defender with a private attorney from the James Law Firm. Mitchell's effort to substitute counsel began on March 21, 2021, when the James Law Firm filed a motion to "authorize the withdrawal of Sam Hall[,]" Mitchell's public defender, and permit the substitution of William O. "Bill" James, Jr. as attorney of record. At that time, Mitchell's jury trial was scheduled for May 4, 2021.

The circuit court first considered Mitchell's motion to substitute counsel during a virtual, pre-trial status hearing on April 15, 2021—just 19 days before the scheduled jury trial. Alex Morphis, an associate attorney at the James Law Firm, attended the hearing. After Hall raised the issue of the James Law Firm's motion to substitute counsel, the circuit court announced "I have a jury trial set for May the 4th[,] and I'm not going to change counsel at this late in the game . . . . Defense motion to substitute counsel is denied." A colloquy between the circuit court and Morphis followed, and Morphis informed the court "we can be prepared to move forward on May 4th."

The circuit court immediately noted a problem with Morphis's assertion and stated, "If I change counsel right now and there's some issue, it's an automatic Rule 37 problem." The circuit court again denied Mitchell's request to substitute counsel. Dissatisfied with the denial, Mitchell himself pled for the circuit court to grant his motion. But before Mitchell could make any substantive argument in support of his motion, the circuit court demanded

---

[1]The jury acquitted Mitchell on a separate second-degree battery charge.

he stop and threatened: "If you interrupt me one more time, Mr. Mitchell, you'll be incarcerated[,] and you can try your case on May the 4th while you're sitting in the Benton County jail. Don't interrupt me again." As the discussion continued, Hall raised the prospect of the James Law Firm serving as co-counsel on the case. Even though the circuit court noted that it was possible, the court nevertheless explained that no such motion was presently pending before the court.

Although Mitchell's jury trial was originally scheduled for May 4th, the circuit court granted a joint motion for a continuance and rescheduled the trial for May 18, 2021. At a pre-trial status hearing on May 4, Mitchell's motion to substitute counsel was again a topic of discussion. There, the circuit court clarified the denial with the following announcement:

> Now, Mr. Hall, last time I believe Bill James'[s] office had filed a motion to substitute counsel, which I denied because we were too close to the jury trial date. I did not prohibit—and I want it to be clear—I did not prohibit either Bill James'[s] firm or another firm if they want to be as co-counsel. If they want to file their motion, I certainly will entertain that. But I just want to make clear on the record I wasn't prohibiting co-counsel, what I didn't want to do is change counsel this close to trial and create an issue.

Public defender Hall then informed the court that the James Law Firm had rejected an offer to serve as co-counsel for Mitchell. Speaking to Mitchell directly, the circuit court then offered:

> [I]f you want co-counsel or you either want a change of counsel, I'll consider it, but the problem was at that late date I didn't want to change counsel so close to the trial date. So if you still want to do that, I just want to make sure you understand I'm not prohibiting that. If you want that done, then please contact additional counsel to find out what you want to do. Okay?

Mitchell responded, "Yes, sir, I will."

At another pre-trial hearing on May 10, the issue of substitution of counsel arose again, and the following colloquy between Mitchell and the circuit court ensued:

MR. MITCHELL:     Your Honor, may I say a word real quick?

THE COURT:     Mr. Mitchell, you've got an attorney and once you've been appointed that attorney you've waived your right to represent yourself. And I don't want you to say anything that might be used against you so I'm not going to allow you to.

MR. MITCHELL:     I'm not going to testify or anything. With all due respect to the court, me and my family we have been talking. My wife talked the Sam Hall several times, on several occasions and she believed in her heart that he's not the attorney for me, and I also believe in my heart that he's not the attorney for me. And the last time we talked you said you would take this on consideration. I'm humbly asking you to take this on consideration right now.

THE COURT:     Well, Mr. Mitchell, there's been no motion filed by any other law firm asking to join as co-counsel or substitution of counsel. We've got trial here in eight days. So I'm not going to change—I'm not going to change counsel at this point, Mr. Mitchell. I'm not going to do that. Mr. Hall has been in this court for years, eight years if I'm not mistaken. He's tried several jury trials in this court. He's conducted himself very competent.

MR. MITCHELL:     I have (unintelligible simultaneous speech) –

MR. HALL:     Mr. Mitchell –

MR. MITCHELL:     I'm sorry, I don't mean to cut you off, Your Honor. I do understand where you're coming from. I truly do. But in conversation me and Mr. Hall had with me and my family is that I'm going to lose this jury trial. He's one hundred percent sure of that. So he's going in there with doubt in his mind. I can have my wife to testify to that. He told her that.

4

THE COURT:    All right.  Well, there's no motion –

MR. MITCHELL:    So if he's going in there with doubt in his mind, why would I even have an attorney to defend me?  There's no one to defend me.

THE COURT:    There's no motion pending, Mr. Mitchell.  I'm going to go ahead and keep this trial on May the 18th.  Mr. Hall is going to be your attorney of record on the case.

Just before the hearing concluded, the State noted that it would object to "further interference by other attorneys," asserting that Hall knew the case well and had been "extremely diligent in his participation."  The court thanked the State and advised Mitchell that he would need to appear in person on May 18. Mitchell said that he would and then added, "I'll go hire me an attorney."[2]  He did not, however, hire another attorney, and the jury trial proceeded with Hall representing him.

After a three-day trial, the jury convicted Mitchell of first-degree battery and failure to appear but acquitted him of second-degree battery.  The James Law Firm then filed a motion to declare Mitchell indigent and sought appointment as his appellate counsel, which the circuit court granted.  The court of appeals affirmed Mitchell's conviction and the circuit court's denial of Mitchell's motion to substitute counsel, but this court granted Mitchell's petition for review.  On appeal, Mitchell presents two theories for reversal: first, the circuit court abused its discretion by denying Mitchell's motion to substitute counsel; and second, there was insufficient evidence to support his conviction for first-degree battery.

---

[2]The record transcript erroneously attributes this quote to Hall.

5

II. *Discussion*

When this court grants a petition for review, it considers the appeal as though it had originally been filed with this court. *In re Estate of Haverstick*, 2021 Ark. 233, at 3, 635 S.W.3d 482, 484.

A. Motion to Substitute Counsel

Mitchell first argues he is entitled to a new trial because the circuit court denied his right to counsel. This court reviews the denial of a motion to substitute counsel for an abuse of discretion. *Bullock v. State*, 353 Ark. 577, 581, 111 S.W.3d 380, 383 (2003). An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Collins v. State*, 2019 Ark. 110, at 5, 571 S.W.3d 469, 472.

Although a criminal defendant is generally entitled to the counsel of his choice, this right "does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). Once a criminal defendant has obtained competent counsel, "any request for a change in counsel must be balanced against the public's interest in the prompt dispensation of justice." *Arroyo v. State*, 2013 Ark. 244, at 6, 428 S.W.3d 464, 469. However, "[i]n each situation[,] the court must look at the particular circumstances of the case at bar, and the issue must be decided on a case-by-case basis." *Id.* at 6–7, 428 S.W.3d at 469. Relevant factors for the circuit court to consider include:

> [W]hether other continuances have been requested and granted; the length of the requested delay; whether the requested delay is for legitimate reasons; whether the motion for a continuance was timely filed; whether the defendant contributed to the circumstances giving rise to the request for a continuance; whether the reason for the discharge of existing counsel was solely for the

6

purpose of obtaining a continuance; and whether the request was consistent with the fair, efficient and effective administration of justice.

*Id.*, at 7, 428 S.W.3d at 469. If these factors weigh in favor of denial, there is no "[e]rroneous deprivation of the right to counsel of choice[]" that "qualifies as 'structural error.'" *Gonzalez-Lopez*, 548 U.S. at 149 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993))

As noted above, the circuit court (over the course of multiple hearings) considered many of the relevant factors articulated in *Arroyo* when denying Mitchell's motion to substitute counsel. *Arroyo*, 2013 Ark. 244, at 7, 428 S.W.3d at 469. Taking the factors in order, the circuit court found that imminently scheduled jury trial weighed against granting Mitchell's request to change counsel, especially considering the number of continuances already granted at both Mitchell's requests and because of the response to COVID-19.

Relatedly, the circuit court was concerned about the timeliness of the request. Mitchell submitted an affidavit of indigency on July 10, 2019, and the circuit court appointed a public defender the same day. The public defender's office continued to represent Mitchell without issue for the next twenty months until the James Law Firm filed its initial motion to substitute counsel less than six weeks before Mitchell's scheduled jury trial. Although Mitchell's request did not come on the eve of trial, *see Tyler v. State*, 265 Ark. 822, 827, 581 S.W.2d 328, 330 (1979), it was nevertheless belated, considering how long the prosecution had been pending and seemingly imminent disposition of the case; the circuit court did not consider the motion until nineteen days before the originally scheduled jury trial. *See Arroyo*, at 7, 428 S.W.3d at 469. Unlike this court's recent opinion in *Stanton*

7

*v. State*, the denial of Mitchell motion to substitute counsel came at the end of the pre-trial preparation, not the beginning. 2023 Ark. 81, at 6–7, ___ S.W.3d ___, ___.

The circuit court thoughtfully and repeatedly considered "whether the request was consistent with the fair, efficient and effective administration of justice." *Id.* Even though the circuit court did not explicitly articulate these factors one by one, the circuit court noted several additional problems with Mitchell's request to change counsel. First, the circuit court was concerned about a potential ineffective assistance-of-counsel claim arising from the James Law Firm having only six weeks to prepare for a jury trial without any continuances. The circuit court did not reach this conclusion thoughtlessly, improvidently, or without due consideration; a criminal defendant *may* have ineffective counsel when there was "actual prejudice that arose from the alleged failure to investigate and prepare for trial and demonstrate a reasonable probability that additional preparation and the information that would have been uncovered with further investigation could have changed the outcome of the trial." *Mason v. State*, 2013 Ark. 492, at 8, 430 S.W.3d 759, 764–65. The circuit court's concern that an ineffective assistance-of-counsel claim *could* (but likely would not) lie was sufficiently grounded in law and was not an abuse of discretion. *See id.*

Finally, Mitchell remained formally indigent throughout the entirety of the prosecution, and he remains indigent on appeal. Although Hall told the circuit court that Mitchell "has hired the Bill James Law Firm[,]" nothing in the record supports such a claim, including any statement by Mitchell or a James Law Firm representative that Mitchell had formally hired the James Law Firm. In fact, Mitchell's announcement to the circuit court at the May 10 pre-trial hearing that "[he]'ll go hire . . . an attorney" suggests he had not

8

hired anyone to represent him, and that Hall remained Mitchell's counsel, both formally and in Mitchell's eyes. As noted above, one's right to choose his counsel "does not extend to defendants who require counsel to be appointed for them." *Gonzalez-Lopez*, 548 U.S. at 151. Mitchell never offered any evidence that he was no longer indigent, and the James Law Firm rejected an offer to serve as co-counsel Hall's co-counsel. Because Mitchell was (and remains) indigent, he was not entitled to the counsel of his choice, *id*., and the circuit court's denial of his motion to substitute counsel was not an abuse of discretion. *Bullock*, 353 Ark. at 581, 111 S.W.3d at 383.

## B. Sufficiency of the Evidence

When reviewing a challenge to the sufficiency of the evidence, this court considers whether there is substantial evidence to support the verdict and "evaluate[s] the facts of the record in the light most favorable to the State." *Brown v. State*, 2021 Ark. 16, at 2, 614 S.W.3d 820, 822. "Substantial evidence is evidence that would compel a conclusion one way or the other beyond suspicion or conjecture." *Id*. It is the jury's prerogative to resolve inconsistent testimony and accept or reject any alternative theories. *Norris v. State*, 2010 Ark. 174, at 2, 368 S.W.3d 52, 54.

A person commits first-degree battery if, with the purpose of causing serious physical injury to another person, he causes serious physical injury to any person by means of a deadly weapon or causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-13-201(a)(1) & (3) (Supp. 2019). A "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious physical injury." Ark. Code Ann. § 5-

9

1-102(4)(B) (Repl. 2013). "Serious physical injury" means "physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ." Ark. Code Ann. § 5-1-102(21).

Mitchell first argues that McCoy failed to specifically testify about what object he had been stabbed with and, therefore, there was no evidence that Mitchell stabbed him with a deadly weapon. But several witnesses testified they witnessed Mitchell pull a knife from his pocket, flip it open, and swing it toward McCoy. McCoy also testified that Mitchell "bumped" him from behind and that his "arm gets nailed, just hit by an object I'll say for now . . . [and] when I looked at my arm, it was just open." Considering this testimony, the jury rejected any alternative theory about what kind of object Mitchell may have stabbed McCoy with. *Norris*, 2010 Ark. 174, at 2, 368 S.W.3d at 54. Thus, there was substantial evidence that Mitchell stabbed McCoy with a knife, i.e., a deadly weapon. *See* Ark. Code Ann. § 5-1-102(4)(B).

Mitchell also argues McCoy did not sustain a "serious physical injury." Citing the medical evidence introduced at trial, Mitchell points out that the injury was a four-centimeter-long laceration that "only needed sutures to repair." Mitchell further argues that McCoy did not testify about the type of medical treatment he received, did not testify that he sustained any injury to any part of his body other than his wrist, and complained only of pain and numbness around the wound. But whether a victim has sustained serious physical injury, and the question of temporary or protracted impairment, are issues for the jury to decide. *Bangs v. State*, 338 Ark. 515, 521, 998 S.W.2d 738, 743 (1999).

10

As explained above, "[s]erious physical injury" means "physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ." Ark. Code Ann. § 5-1-102(21). This court has before held that a five-centimeter laceration that required closure with staples constituted a serious physical injury. *Banks*, 338 Ark. at 521, 998 S.W.2d at 743. Relatedly, a victim's recovery from such an injury does not change the degree of injury. *Brown v. State*, 347 Ark. 308, 316, 65 S.W.3d 394, 399 (2001). Here, the State introduced evidence—including photographs of the wound—that McCoy suffered a four-centimeter-long laceration to his arm, which was deep enough to require multiple sutures to close. The laceration also caused scarring and resulted in McCoy experiencing numbness in the area two years later. The physician assistant who treated McCoy also testified that the stab wound extended to McCoy's fascia, which is the layer of tissue that separates a person's skin from his muscles and tendons. Considering this, the State introduced substantial evidence that McCoy suffered a serious physical injury from the stabbing, which is sufficient to support Mitchell's conviction for first-degree battery. *See Banks*, 338 Ark. at 521, 998 S.W.2d at 743.

Affirmed; court of appeals' opinion vacated.

KEMP, C.J., concurs without opinion.

BAKER, HUDSON, and WYNNE, JJ., dissent.

**KAREN R. BAKER, Justice, dissenting**. Because the circuit court abused its discretion in denying Mitchell's motion for substitution of counsel, I dissent. The majority's opinion is patently flawed for three reasons.

11

First, the majority asserts that "[t]he circuit court (*over the course of multiple hearings*) considered many of the relevant factors articulated in *Arroyo* when denying Mitchell's motion to substitute counsel." (Emphasis added.) However, this court has long held that deprivation of the right to be assisted by counsel of one's choice is complete "when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Arroyo v. State*, 2013 Ark. 244, at 5, 428 S.W.3d 464, 468 (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006)). Therefore, any analysis of whether Mitchell's Sixth Amendment rights were violated necessarily cannot extend beyond the moment that the circuit court entered an order denying his motion to substitute counsel. Any offers by the circuit court to accommodate Mitchell's request to substitute counsel at subsequent pre-trial hearings, as well as any belated attempts by the circuit court to fix its earlier denial of Mitchell's motion, were ineffectual to remedy the harm because the constitutional violation had already occurred.

Second, the majority fails to recognize that our holding in *Arroyo*, 2013 Ark. 244, 428 S.W.3d 464, is instructive. The majority maintains that, because the circuit court expressed "[concern] about a potential ineffective assistance-of-counsel claim arising from the James Law Firm having only six weeks to prepare for a jury trial without any continuances" and "[concern] about the timeliness of the request," it properly considered the factors set forth in *Arroyo*. A review of the record demonstrates that, during the April 15 hearing at which Mitchell's motion was considered, the extent of the circuit court's concerns was that "[w]e've got a jury trial set for May the 4th . . . I'm not going to allow the change of counsel this late. I'm not going to have a built-in Rule 37." As the majority points out,

"before Mitchell could make any substantive argument in support of his motion, the circuit court demanded he stop and threatened: 'If you interrupt me one more time, Mr. Mitchell, you'll be incarcerated[,] and you can try your case on May the 4th while you're sitting in the Benton County jail. Don't interrupt me again.'" In *Arroyo*, we reversed and remanded for a new trial on similar grounds, holding that the circuit court failed to consider Arroyo's interests because there was "no evidence that the circuit court gave any consideration to [Arroyo's] right to choice of counsel. Rather, the circuit court declined to hear from [Arroyo's new counsel] about why a continuance was necessary and failed to conduct any inquiry into [Arroyo's] request for new counsel." *Id*. at 8–9, 428 S.W.3d at 470. The same is true in the present case, except Mitchell did not request a continuance as was done in *Arroyo*. Here, Mitchell sought to substitute an attorney that he had already privately retained. Although it was made clear that the James Law Firm could be ready for Mitchell's trial without delay, the circuit court denied the motion to substitute counsel and failed to conduct any inquiry into the basis for Mitchell's request, citing vague concerns about creating "an automatic Rule 37 problem." As we observed in *Arroyo*, the record before us plainly demonstrates that there is no evidence that the circuit court balanced Mitchell's right to choice of counsel against the needs of fairness and the demands of its calendar. *See Arroyo*, 2013 Ark. 244, at 7, 428 S.W.3d at 470 (citing *Gonzalez-Lopez*, 548 U.S. at 152).

Third, the majority's decision is an abrupt about-face from our recent decision in *Stanton v. State*, 2023 Ark. 81, ___ S.W.3d ___, a case in which we upheld one's right to counsel of choice under circumstances far more complex than the present case. In *Stanton*, Stanton's privately retained criminal defense attorney, Patrick Benca, declared himself to be

13

a necessary witness during Stanton's second trial, successfully sought a mistrial, and was ultimately disqualified from further representing Stanton in the case. *Id.* at 2, ___ S.W.3d at ___. Ahead of Stanton's fourth trial, Stanton again retained Benca to represent him, and Benca was disqualified once more based on the circuit court's prior disqualification order. *Id.* at 4, ___ S.W.3d at ___. After recognizing that violations of the right to counsel of choice constitute structural error, we reversed Benca's second disqualification, concluding that "we believe little chance exists of [Benca] being called [as a witness] in the fourth [trial]." *Id.* at 5–7, ___ S.W.3d at ___. The United States Supreme Court has explained that structural errors "defy analysis by 'harmless-error' standards" because they "affec[t] the framework within which the trial proceeds," and are not "simply an error in the trial process itself." *Reams v. State*, 2018 Ark. 324, at 16–17, 560 S.W.3d 441, 452 (citing *Gonzalez-Lopez*, 548 U.S. at 148). Therefore, structural errors require automatic reversal on appeal. *See Neder v. United States*, 527 U.S. 1, at 7–8 (1999).

The majority attempts to distinguish *Stanton* from the present case by pointing out that "the denial of Mitchell['s] motion to substitute counsel came at the end of the pre-trial preparation, not the beginning." However, this distinction is meaningless. A close review of the record demonstrates that there is only one marked difference to explain the majority's sharp departure from the holding in *Stanton*—the financial means of the criminal defendants. This distinction is underscored by the majority's conclusion that "[b]ecause Mitchell was (and remains) indigent, he was not entitled to the counsel of his choice." As the majority points out, we have observed that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Arroyo*, 2013 Ark. 244, at 5, 428

14

S.W.3d at 469 (citing *Gonzalez-Lopez*, 548 U.S. 140); *see also Luis v. United States*, 578 U.S. 5 (2016) (holding that an indigent defendant, while entitled to adequate representation, has no right to have the Government pay for his preferred representational choice).

While I agree that an indigent defendant has no right to choose his *appointed* counsel, the majority misconstrues both the law and Mitchell's request. The record demonstrates that Mitchell had *retained* the James Law Firm. The majority inexplicably rationalizes its view that Mitchell was not entitled to counsel of his choice by pointing out that, "[a]lthough Hall told the circuit court that Mitchell 'has hired the Bill James Law Firm[,]' nothing in the record supports such a claim[,][1]" and "Mitchell never offered any evidence that he was no longer indigent[.]" The majority's holding yields the untenable position that, once declared indigent, a criminal defendant may not retain private counsel unless and until *his own* indigency status changes regardless of the source of funds from which the representation is obtained. The majority cites no authority in support of this position, as no such law exists. On the contrary, the fact that Mitchell remained indigent throughout the course of his trial is immaterial to our analysis. This position overlooks the reality that, in many instances, third parties provide funding for the legal defense of indigent defendants. Accordingly, the majority's holding haphazardly diminishes the constitutional right to counsel of choice for indigent defendants.

For these reasons, I would reverse and remand for a new trial.

---

[1] I disagree with the majority's assertion that there is nothing in the record to support the claim that Mitchell had hired the James Law Firm. On the contrary, the record demonstrates that the James Law Firm filed a motion for substitution of counsel and several pre-trial motions, and an attorney from the James Law Firm appeared on Mitchell's behalf at the April 15 pre-trial hearing, notably not requesting a continuance.

HUDSON and WYNNE, JJ., join.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.