Cite as 2025 Ark. 8

# SUPREME COURT OF ARKANSAS
**No.** CR–24–388

|  |  |  |
|---|---|---|
| | | **Opinion Delivered:** February 13, 2025 |
| CHRIS ALLEN OLIGER | APPELLANT | APPEAL FROM THE JOHNSON COUNTY CIRCUIT COURT [NO. 36CR-21-455] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE JAMES DUNHAM, JUDGE |
| | | AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

Chris Oliger appeals his convictions for capital murder and aggravated robbery, arguing the evidence was insufficient to support the verdicts. But the trial evidence demonstrated that he sent multiple social-media messages beforehand outlining his plan to rob the victim. Also, he admitted to police that he stabbed the victim in the throat, a wound the medical examiner confirmed was fatal. Viewing this and other evidence in the light most favorable to the verdict, we affirm the convictions.

## I. *Factual Background*

The evidence and testimony supporting the verdict from the jury trial revealed the following facts. In December 2021, Deanna Teague and her daughter were moving into a new apartment in Lamar, Arkansas. Deanna's daughter said she last saw her mother on Friday, December 3, when her mom and appellant, Chris Oliger, took her to a friend's house for a sleepover. Oliger had been assisting Deanna with her move. Deanna was supposed to pick her daughter up from the sleepover but never did.

On December 6, Deanna's daughter went to check on her mother at the apartment. The landlord let her in, and the apartment appeared to have been trashed. Inside, her daughter saw a hole in the wall and blood. She also discovered that the cash her mother kept in a filing cabinet was missing, and her mother's car, a black Acura, was missing, too. She called the police. The police discovered Deanna's body inside the apartment. A neighbor also reported to police that, on December 4, he heard a man and a woman arguing along with loud banging and crashing sounds.

Dr. Steven Erickson, a medical examiner at the Arkansas State Crime Laboratory, testified. Dr. Erickson performed a forensic autopsy on the victim. Deanna had been stabbed four times. Some of the wounds were defensive. Dr. Erickson concluded one of those stab wounds, the one to the throat, was likely fatal. He approximated that death occurred on December 4 after 10:00 p.m. DNA recovered from Deanna's hands and nail clippings matched Oliger's DNA within a statistical probability.

The State's case included evidence of Oliger's communications both before and after the murder. On December 4, shortly before noon, Oliger sent a Facebook message to Trista Norris saying, "I got this little kick I want to hit, but I ain't got anyone to pick me up. And when I do it, I got to go at same time." He followed up shortly with another message, which said, "It's money, gold and some s★★★, and weed, and some stuff to sell." He sent a similar message to Cody Hardin, via Facebook: "I . . . got a kick on b★★★★ right now, but I don't know where I'd go or how I'd leave, bro. Dope, cash, and all kinds of s★★★—gold." He also messaged Dea Michelle on December 4, saying, "I need you to come to Lamar Park [near the victim's residence], cause when this motherf★★★★★ gets in the shower, I'm hit them for real."

Another Oliger message to Norris said, in part, "there like thousands in the closet and little safe in the front room . . . I just got to figure out the rest of the s★★★ and how to get out." These messages were sent on December 4, the day he admitted he helped Deanna move. Early the next morning, following the murder, Oliger messaged, "Hey, I got it. I need someone to drive this car, please." When Norris appeared unable to help, Oliger sent the following: "I got to get out here as soon as possible, girl . . . I got the car; I got hell of gold tiger money." He then messaged that he needed paint in one color and that "[he] did the d★★★ thing and bad. For real."

Additionally, law enforcement discovered more Facebook messages to and from Oliger related to Deanna's assets after she had been killed. A message from Leslie Patterson said, "Cards and account numbers. I have blank payroll checks; I can use her account numbers to print blank—bank." Oliger then sent pictures of Deanna's debit cards, account number, credit card, and Social Security card. These pictures also showed a key fob for an Acura vehicle.

Next, there was evidence that Deanna's financial assets were used after her death. For example, her debit card was used to pay an electric bill, the State of Arkansas, Walmart, and the Hampton Inn for a hotel room in Clarksville. Bank records also showed that Deanna had received a $3000 check from her parents; when she deposited the check, she kept $2500 of the money in cash. The cash was not recovered. A burned black Acura was later discovered in Scott County, but the VIN could not be identified.

The police conducted an interview with Oliger on December 6, 2021. He admitted that he had helped Deanna move into her new apartment. But he claimed the last time he'd seen her alive was when she dropped him off at a gas station. He provided an alibi for the

night of December 4—Monica Hughes and Josh Stumbaugh. Approximately one hour after providing the alibi, Oliger used Deanna's credit card to restore Monica Hughes's electricity. Hours later, he sent Monica messages urging that she back up his story of his actions and whereabouts for the time around Deanna's murder.

The police conducted a second interview with Oliger on December 10. During the interview, Oliger admitted that he took Deanna's car but denied that he had killed her. A third interview took place the next day. Oliger finally admitted that he had stabbed her in the throat but had done so only because she had tried to stab him first. Oliger claimed a third person had been present, who also stabbed the defendant.

Last, there was evidence that Oliger confessed to the murder to others. On December 5, Oliger told Trista Norris, whom he had been messaging with on Facebook, that he had killed someone, and Norris saw him driving a black car. Oliger told Norris that he had left the body of the person he killed in a pile of clothes for her daughter to find. He also showed her multiple credit cards and debit cards. She said the name "Deanna" was on one of the cards.

Oliger also told his sister that he had stabbed a woman in the throat and that he had stolen gold bars from her. He said he killed her because he thought she was a cop. Oliger admitted that he had taken the victim's car and that no one "would be able to find it unless somebody snitched." Oliger, in his sister's presence, rented a room at the Hampton Inn with Deanna's debit card; and he put the room under his sister's name. His sister left him and then contacted law enforcement.

The jury convicted Oliger of capital murder. The State submitted two theories to the jury—felony murder and premeditated murder. The jury convicted Oliger under both

theories. Oliger received life in prison. The jury also convicted Oliger of aggravated robbery and theft of property. Oliger received a life sentence for aggravated robbery and 144 months for theft of property.

## II. *Law and Analysis*

### A. Capital Murder

At trial, the jury convicted Oliger of capital murder on the basis of two underlying theories—(i) felony murder and (ii) premeditated and deliberate murder. As to felony murder, Oliger argues that the proof was lacking that Oliger committed the murder in the course or furtherance of a felony—that is, aggravated robbery. As for premeditated murder, Oliger argues that the proof was insufficient that he had the necessary mental state. Instead, he contends evidence showed he killed Teague to avoid being stabbed himself. We hold that substantial evidence supported the conviction.

In addressing the sufficiency challenge, we review only evidence that supports the verdict and in the light most favorable to the State; we will affirm if substantial evidence—direct or circumstantial—supports the verdict. *Doucoure v. State*, 2024 Ark. 162, at 4, 698 S.W.3d 643, 645. Because it is difficult to prove intent by direct evidence, a jury may infer premeditation and deliberation from circumstantial evidence. *Keesee v. State*, 2022 Ark. 68, at 3, 641 S.W.3d 628, 633. Circumstantial evidence is evidence of circumstances from which a fact may be inferred. *Wright v. State*, 2022 Ark. 103, at 6, 644 S.W.3d 236, 240. Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.*

5

To prove capital murder under a felony-murder theory, the State must prove two things. First, it must prove that Oliger committed or attempted to commit aggravated robbery. Ark. Code Ann. § 5-10-101(a)(1)(A)(vi) (Supp. 2021). Second, it must prove that Oliger, in the course of and in furtherance of the aggravated robbery or in immediate flight from the aggravated robbery, caused the death of a person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-101(a)(1)(B). "A strict causal relationship between the felony and the murder is unnecessary; rather, the State need only prove that the robbery and the murder were parts of the same transaction or occurred within the same brief interval." *Collins v. State*, 2020 Ark. 371, at 4, 610 S.W.3d 653, 656 (internal quotation marks omitted).

On appeal, Oliger challenges the first element. He argues the evidence failed to show that Oliger killed Deanna as he was robbing her. We disagree. The medical examiner testified that the murder likely happened around 10:00 on the evening of December 4. A neighbor heard loud banging and noises around that time. The evidence showed that before the murder took place, Oliger sent Facebook messages to multiple people regarding the money, gold, and other items that he intended to steal from Deanna.

After the murder, Oliger sent additional messages on Facebook about what he'd stolen; he even sent pictures of Deanna's credit and debit cards with an Acura key fob in the background. And there was testimony he ultimately used the cards to make several purchases. We have affirmed a felony-murder conviction based on robbery when the defendant shot the victim and then took the victim's "cash, Visa card, and car." *Terry v. State*, 371 Ark. 50, 57, 263 S.W.3d 528, 533 (2007). The similar evidence here was sufficient

to show that the murder and robbery took place within the same brief interval and were part of the same transaction or scheme. *Collins*, *supra.*

Oliger's primary argument on appeal is that in his own interviews with the police, he explained that he stabbed Deanna only because she tried to stab him first. But the jury was not required to believe Oliger's self-serving statements. *See Brown v. State*, 374 Ark. 341, 344, 288 S.W.3d 226, 230 (2008). Nor does this evidence affect our analysis because, being contrary to the verdict, it falls outside our review whether substantial evidence supported the conviction. We affirm the capital-murder conviction based on felony murder.[1]

## B. Aggravated Robbery

The second issue Oliger challenges on appeal is his aggravated-robbery conviction. Oliger's argument centers on timing. He argues that the jury had to speculate about when the robbery occurred. He claims that it occurred after Deanna's accidental death, so it could not meet the elements of aggravated robbery. A person commits aggravated robbery if he (i) commits robbery and (ii) is armed with a deadly weapon, represents by word or conduct that he is armed with a deadly weapon, or inflicts or attempts to inflict death or serious physical injury upon another person. Ark. Code Ann. § 5-12-103(a)(1)–(3) (Repl. 2013). Robbery is defined as follows: "with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft,

---

[1]Because we can affirm on the felony-murder theory, we do not separately decide whether the premeditated-and-deliberate theory was deficient. *Keesee v. State*, 2022 Ark. 68, at 6, 641 S.W.3d 628, 635. Also, because we affirm on capital murder, we do not address the alternative arguments about lesser-included offenses because Oliger was not convicted of those crimes.

7

the person employs or threatens to immediately employ physical force upon another person." Ark. Code Ann. § 5-12-102(a).

Substantial evidence supported the aggravated-robbery conviction. Leading up to the murder, Oliger sent multiple Facebook messages to different people indicating that he intended to rob the victim. The messages specifically mention money, gold, and items to sell. One message also showed that Oliger knew where the victim kept her money. Then he killed Deanna. After the murder, Oliger sent pictures of Deanna's cards, and then used them to make purchases. We hold that substantial evidence supported a verdict that Oliger had the intent to commit robbery, that he committed the robbery, and that he caused the victim's death as a result. We accordingly affirm the aggravated-robbery conviction.

III. *Rule 4-3(a)*

In compliance with Arkansas Supreme Court Rule 4-3(a), we have examined the record for all objections, motions, and requests made by either party that the circuit court decided adversely to the appellant. No prejudicial error has been found.

Affirmed.

*Omar F. Greene*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.