Cite as 2026 Ark. 30

# SUPREME COURT OF ARKANSAS
**No.** CR–25–359

| | |
|---|---|
| CHRIS ALLEN OLIGER<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** February 12, 2026<br><br>PRO SE APPEAL FROM THE JOHNSON COUNTY CIRCUIT COURT<br>[NO. 36CR-21-455]<br><br>HONORABLE JAMES DUNHAM, JUDGE<br><br><u>AFFIRMED</u>. |

**CODY HILAND, Associate Justice**

Appellant Chris Allen Oliger appeals from the denial and dismissal of his petition for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37.1. In his petition, Oliger alleged ineffective assistance of counsel for failure to investigate the contents of a laptop and unidentified DNA found on a knife at the crime scene. Oliger also raised a *Brady* claim on the basis that the prosecutor suppressed a laptop that allegedly contained an exculpatory recording.[1] Finally, Oliger claimed that the prosecutor knowingly presented false testimony. Below, the circuit court entered a detailed order addressing each of Oliger's claims and denied and dismissed petition. On appeal, Oliger raises the same claims raised below. His arguments are without merit. Thus, we affirm.

---

[1]*See generally Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)

## I. *Background*

In 2023, Oliger was convicted by a Johnson County jury of capital murder, aggravated robbery, and theft of property. Oliger was sentenced to an aggregate term of life imprisonment. We affirmed his direct appeal. *See Oliger v. State*, 2025 Ark. 8, 704 S.W.3d 305. Our opinion set out the evidence adduced at trial, which included, among other things, that Oliger had sent multiple social-media messages to friends revealing his intention to rob the victim, Deanna Teague; that he admitted to investigators and others that he had stabbed Teague in her throat, which was the fatal wound; that he admitted stealing Teague's car; that DNA on Teague's hands and fingernail clippings matched Oliger's DNA within a statistical probability; and that evidence following the murder established that Oliger possessed and used Teague's credit cards. *Id.* at 1–5, 704 S.W.3d at 306–08.

## II. *Standard of Review*

We will not overturn the denial of postconviction relief absent a finding of clear error. *Barefield v. State*, 2024 Ark. 141, at 3, 696 S.W.3d 822, 826. A finding is considered clearly erroneous when, despite some supporting evidence, our review of the entire record leaves us with a definite and firm conviction that an error has occurred. *Id.*, 696 S.W.3d at 826.

## III. *Claims for Relief*

The direct-appeal record[2] reveals that Oliger and Mark Mathis helped Teague move into an apartment on the day she was murdered. Oliger's claims for relief are based on his

---

[2]This court may take judicial notice in postconviction proceedings of the record on direct appeal without need to supplement the record. *Wright v. State*, 2025 Ark. 54, at 3 n.3, 709 S.W.3d 805, 806 n.3.

2

allegation that a laptop was present at the crime scene and recorded the "incident leading to the victim's demise." According to Oliger, the recording shows that Teague and Mathis argued over money that Mathis owed Teague, and during the course of the argument, Mathis stabbed Teague three times. Oliger also claims that Teague fell on her own knife while trying to defend herself, resulting in the fatal stab wound to her neck. Finally, Oliger alleged that after Teague's death, he stole Teague's possessions, including a laptop that he turned over to his sister, Tonya Wood.[3]

## A. Ineffective Assistance of Counsel

Oliger alleges that he informed his trial counsel about the stolen laptop and the exculpatory recording it contained that implicated Mathis as the murderer. Oliger contends that counsel refused to investigate or attempt to take possession of the stolen laptop, which Oliger contends was in his sister's possession at the time. Oliger also alleges that counsel was ineffective for failing to investigate an unidentified partial DNA profile found on the handle of one of the knives recovered from the crime scene. Oliger asserts that the DNA would have matched Mathis's DNA.

We review ineffective-assistance-of-counsel claims using the two-step analysis arising out of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Barefield*, 2024 Ark. 141, at 3, 696 S.W.3d at 826. Under *Strickland*, a petitioner is required to show that their trial counsel's performance was deficient and then due to such deficiencies it prejudiced their defense. *Id.*, 696 S.W.3d at 826–27.

---

[3]In the direct-appeal record, Wood's first name is spelled "Tonia," and in Oliger's Rule 37.1 petition, he spells her name "Tonya."

3

Regarding the threshold issue of deficiency, we presume that a trial counsel's performance was sufficient. *Id.*, 696 S.W.3d at 827. To overcome that strong presumption, the petitioner must demonstrate specific acts and omissions that—when viewed from the trial counsel's perspective over the course of the trial—could not have been the result of "reasonable professional judgment." *Id.* at 3–4, 696 S.W.3d at 827. Allegations without factual substantiation are insufficient. *Id.* at 4, 696 S.W.3d at 827. Furthermore, merely conclusory statements that one's counsel was ineffective cannot be the basis for postconviction relief. *Id.*, 696 S.W.3d at 827.

As for the remaining issue of prejudice, a petitioner must affirmatively demonstrate that the deficiency resulted in a prejudicial outcome. *Barefield*, 2024 Ark. 141, at 4, 696 S.W.3d at 827. They must show that there is a reasonable probability that the fact-finder's decision would have been different absent their trial counsel's deficiencies. *Id.*, 696 S.W.3d at 827. As we have said before, "[t]his is a high bar." *Id.*, 696 S.W.3d at 827. If a Rule 37 petition fails at the threshold issue of deficiency, we need not address the remaining prong that weighs its potential prejudicial effect. *Id.*, 696 S.W.3d at 827.

Here, there is no evidence to support Oliger's conclusory claims that a stolen laptop proved Mathis was the murderer or that Teague stabbed herself during the attack. Those claims are directly contradicted by the record on direct appeal.

The trial transcript shows that the jury heard multiple recorded statements Oliger made to investigators. Across three separate interviews, Oliger never mentioned a laptop belonging to Teague or any recording of the crime. If Oliger knew of a laptop containing evidence of his innocence, it is unlikely he would have failed to disclose it. Instead, during

4

the third interview, Oliger admitted that he stabbed Teague in her throat. *See Oliger*, 2025 Ark. 8, at 4, 7, 704 S.W.3d at 307, 309.

The record also establishes that Oliger admitted to a witness, Trista Norris, that he had killed someone. He told Norris he covered the body with clothing and showed her the victim's credit cards. Norris's testimony was corroborated by evidence that Teague's body was found under a pile of clothing. Norris further testified that she saw Teague's first name on the credit cards in Oliger's possession.

Oliger's sister, Wood, testified that Oliger admitted to her that he had stabbed someone in the throat. She also witnessed Oliger rent a hotel room using Teague's credit card. Although Oliger claimed that Wood took possession of the laptop for safekeeping, Wood's only testimony regarding a laptop was that Oliger stole it from Teague on the night she was murdered. Oliger presented no evidence that the laptop contained an exculpatory recording. Accordingly, he failed to rebut the presumption that counsel was effective because he provided no factual support for his claim that counsel failed to investigate a laptop containing potentially exculpatory evidence.

Second, Oliger argues that counsel was ineffective for failing to obtain a DNA comparison between Mathis and an unidentified partial DNA profile found on a folding knife recovered from Teague's home. Investigator Matt Foster testified that two knives were found at the scene. One was a fixed-blade knife discovered outside Teague's bedroom window. Foster testified that Oliger admitted he exited the apartment through that window. The second knife was a folding knife found in a box containing miscellaneous

5

household items inside the apartment. Foster testified that it was unknown which knife inflicted Teague's wounds.

Oliger presented no evidence that the unidentified DNA profile would have implicated Mathis. Trial testimony established that Teague was murdered sometime after 10:00 p.m., when she last spoke with her daughter. Foster testified that Mathis's phone data confirmed Mathis's alibi and showed he was not near Teague's home during the relevant time period. The evidence further showed that the fatal wound was to Teague's neck, and Oliger admitted to investigators and to his sister that he stabbed Teague in the neck. The fixed-blade knife was also directly connected to Oliger because it was recovered outside the window through which he admitted exiting the apartment.

Counsel was not ineffective for declining to seek DNA testing to connect Mathis to the folding knife. Neither knife was definitively established as the murder weapon. It was reasonable for counsel to forgo testing DNA on a knife that could not be shown to have been used in the murder, particularly for the purpose of implicating a suspect whose alibi had already been verified.

Even if Mathis's DNA had been found on the folding knife, there is no reasonable probability that the outcome of the trial would have changed. The evidence showed that Oliger was the last person seen with Teague; he admitted exiting the apartment through a window near where the fixed-blade knife was found; he stole Teague's car; he possessed her credit cards after her death; he admitted to investigators, his sister, and Norris that he killed Teague; and his DNA was found on Teague's hands and nail clippings. The jury was aware that Mathis had been present at Teague's apartment earlier that day and that

6

unidentified DNA was found on one of the knives. That evidence did not create reasonable doubt as to Oliger's guilt.

## B. *Brady* Violation

Oliger also claims that Wood turned over the laptop containing exculpatory evidence to investigators who suppressed the laptop and its contents in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). An allegation that evidence was withheld in violation of *Brady* "may not constitute fundamental error that would render the judgment subject to collateral attack so as to be cognizable in Rule 37.1 proceedings if the issue was one that could have been raised at trial or on direct appeal." *Flemons v. State*, 2016 Ark. 460, at 10–11, 505 S.W.3d 196, 205.

Here, Oliger clearly knew about the laptop and its contents. He could have raised this issue at trial. Moreover, as discussed above, there is insufficient evidence to demonstrate that the stolen laptop contained potentially exculpatory evidence. Consequently, Oliger's *Brady* claim is not supported by evidence of the existence of a potentially exculpatory recording and is otherwise not cognizable in a Rule 37.1 proceeding.

## C. Presentation of False Testimony

Lastly, Oliger alleges that the prosecution suborned perjury when Mathis was called to testify that he was "across town" at the time of Teague's murder. According to Oliger, investigators were aware of the purported laptop recording showing that Mathis was the murderer and that the unidentified DNA would have matched Mathis, but the prosecution allowed Mathis to falsely testify to the contrary. Again, Oliger's claim regarding the existence of a stolen laptop recording has no evidentiary support. In any event, a claim of

7

prosecutorial misconduct, including a claim of suborning perjury, is a direct challenge to the conviction and is therefore not cognizable in postconviction proceedings under Rule 37.1. *Dennis v. State*, 2020 Ark. 28, at 14, 592 S.W.3d 646, 655. Thus, the circuit court did not clearly err when it denied and dismissed Oliger's petition.

Affirmed.

*Chris Allen Oliger*, pro se appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.