Cite as 2026 Ark. App. 276

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CR-25-677

| | |
|---|---|
| DEMONTREY HERRON | Opinion Delivered May 6, 2026 |
| APPELLANT | |
| | APPEAL FROM THE OUACHITA COUNTY CIRCUIT COURT |
| V. | [NO. 52CR-23-321] |
| STATE OF ARKANSAS | HONORABLE JOHN THOMAS |
| APPELLEE | SHEPHERD, JUDGE |
| | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant Demontrey Herron appeals from his July 23, 2025 conviction by an Ouachita County jury for aggravated robbery for which he was sentenced to twelve years' imprisonment. His sole argument on appeal is that the circuit court erred in denying his motion for directed verdict because the evidence was insufficient to support his conviction. We affirm.

### I. *Facts and Procedural History*

On October 30, 2023, Faye Hopson was working at Express Liquor in Camden, Arkansas, where she had been employed for seventeen years. At 10:07 a.m., a man walked into the store with a t-shirt wrapped around his head, pointed a gun at Hopson, and demanded that she give him all the money. After taking the cash out of one register, he asked her about the other register. She told him that the remainder of the money was in the back.

With the gun pointed at Hopson, the robber took her to the back room, grabbed the cash drawer, and ordered her to the ground. She complied, and the robber ran out the front door with the cash drawer in hand.

Hopson immediately called 911. Officer Todd Joffrion of the Camden Police Department ("Camden PD") arrived within two minutes of her call. Hopson met him at the door, relayed the events that had occurred, and described the robber as a black male wearing dark clothing with something wrapped around his face—his eyes, nose, and top lip exposed.

In a field behind the store, officers found cash strewn around. Some of it was clipped together and sorted by denomination like the cash in the liquor store. Found in the same field was a t-shirt with the words "Camden Housing Authority" on it. Although it had been raining the previous night and the morning of the robbery, the t-shirt had dry spots on it, indicating that it had not been in the field very long. During their review of surveillance footage from the seventeen cameras in and around the liquor store, officers saw that the visible part of the t-shirt the robber was wearing had "Camden" written on it in the same lettering as the one found outside the liquor store.

The Camden PD posted images of the robber on social media in an attempt to identify him. Jonathan Cooper saw the image online and recognized the person as Herron, who was his brother's friend. Although Cooper was employed by the Camden PD at the time, he had not been told that Herron was a suspect, been provided with the image before seeing it on social media, or been made aware that a robbery had occurred. After recognizing Herron on social media, Cooper visited Herron's mother, Sonya White, who at the time

lived at a complex run by the Camden Housing Authority. He showed her the image the police had posted on social media.

On November 1, Herron was arrested and charged with aggravated robbery in violation of Arkansas Code Annotated section 5-12-102 (Repl. 2013), a Class Y felony, and theft of property (less than $1,000) in violation of Arkansas Code Annotated section 5-36-103 (Supp. 2023), a Class A misdemeanor. The next day, the police collected a buccal swab from him. The DNA from Herron's buccal swab matched the DNA on the t-shirt found in the field. The amount of Herron's DNA on the t-shirt showed he was the person who had the most contact with the piece of clothing. Although there was another minor component of DNA on the t-shirt, there was too little DNA to identify a match.

On December 28, Herron was charged by felony information with one count of aggravated robbery stemming from the October 30, 2023 robbery of the Express Liquor store.

A jury trial was held on April 29, 2025. The first witness for the State was Officer Joffrion. He testified that on October 30, 2023, while on day shift, he received a call around 10:30 a.m. about a robbery in progress at Express Liquor. Officer Joffrion explained that he was the first officer at the scene and found Hopson inside the store, visibly shaken. He testified that Hopson reported that a man had come into the store, pointed a gun at her, and taken money from the registers, including removing the actual drawer from one register. Officer Joffrion further detailed the description of the robber that Hopson gave him as a black male wearing dark clothing, approximately five feet seven or five feet eight, with

3

something wrapped around his face. The body-camera video of his interaction with Hopson was admitted and played. Officer Joffrion acknowledged that he did not search for fingerprints and that Hopson did not identify the suspect by name.

Man Preet Singh Kang testified that he had owned Express Liquor for roughly the past ten years and that Hopson had worked there since he bought it. He noted that Hopson's last day working there was October 30, 2023, the day of the robbery. He testified that Hopson was a great employee and that she worked most of her shifts alone unless it was the weekend. On October 30, 2023, he received a call from Hopson around 10:30 a.m. during which she sounded distressed and stated that she had just been robbed at gunpoint. He testified that he immediately went to the store and found that officers had already arrived. Hopson stated that she was fine, and he gave her a ride home. He testified that he then went back to the store and helped police obtain the surveillance footage from the store. He noted that there was a total of seventeen cameras inside and outside the store, which showed the individual robbing the store. He pointed out that approximately $900 was taken from the store and that the store always starts the morning with $1,500. Several videos of different angles from the surveillance system were admitted and played. He also testified that over the years, the store had employed others besides Hopson and that only employees knew that the store always started the day with $1,500. He confirmed that Herron had never been an employee of the store. He also noted that no merchandise was taken, only cash.

Sergeant Ashley Watts with the Criminal Investigations Division of the Camden PD testified that she responded to a robbery call at Express Liquor on October 30, 2023, at

approximately 10:30 a.m. She took photos of the crime scene, and fifteen photos were admitted. Officer Watts testified that evidence—specifically a trail of cash—was located in an open field on the south side of the building. Officer Watts testified that she followed the trail through the field to the creek before the railroad tracks, finding cash along the way. She noted that conditions that day were damp because it had just rained. Officer Watts explained that they also found and collected a black t-shirt along the trail in the field and that appeared out of place because it was dry. Officer Watts testified that a still photo was taken from the surveillance video and that it appeared that the word "Camden" was on the material that was wrapped around the suspect's head. She noted that the black t-shirt found in the field was a Camden Housing Authority t-shirt with the same colors and same lettering as the shirt wrapped around the suspect's head. Another still photo showed the suspect carrying a register drawer with cash in his right hand and a firearm in his left hand. A third still photograph was taken and disseminated to officers to show to the public in an attempt to identify the suspect. Officer Watts testified that in this photo, the suspect's head is covered with a black t-shirt, but his eyes, nose, and top lip area are exposed. She testified that the suspect had a very distinguishing nose. Officer Watts testified that she collected the black t-shirt, properly sealed it, and sent it to the Arkansas State Crime Laboratory ("Arkansas Crime Lab"). Officer Watts also confirmed that she collected Herron's and Steven Louis's buccal swabs, which were also properly sealed and sent to the Arkansas Crime Lab for comparison.

On cross-examination, Officer Watts also confirmed that no attempt had been made to collect any fingerprints from the store because of the high volume of traffic––even

5

thoughthe suspect was not wearing gloves. Officer Watts specified that $210 in cash was collected from the trail in the field and that the remaining missing cash was never recovered. She noted that the black shirt was not wet, but it was damp. Officer Watts also confirmed that there were five housing authorities in Camden, one a mile away in the direction of the trail searched, and one just across the street near the liquor store. Officer Watts testified that no firearm was ever recovered, and she could not describe the make or model of the firearm in the video. Officer Watts also acknowledged that a search warrant was executed at Herron's residence and that no firearms—or anything firearm related—were found. Finally, Officer Watts confirmed that the t-shirt found was a size large.

Herron's mother, Sonya White, testified that in October 2023, she lived in the housing authority at 27 Riverside Courts. She stated that Herron did not live with her and did not come visit her there. She testified that she did not know where Herron was living. White confirmed that in October 2023, Jonathan Cooper came to see her about Herron. White testified that Cooper showed her a photo and that it looked like Herron. She said that she loves her son and would do anything for him but would not lie for him.

Tessa Prost, a forensic DNA analyst with the Arkansas Crime Lab, explained that she analyzed the two buccal swabs and swabs from the black t-shirt. Prost testified that one swab from the t-shirt had DNA consistent with two individuals, a major and minor component. Prost testified that the minor component was inconclusive because there was too little DNA for testing, but the major male component was consistent with Herron. Prost explained that DNA can be transferred to a shirt from touch transfer, such as wearing it, or through

6

biological fluids. Prost testified that on a second swab from the shirt, the report indicated that there was DNA from more than one individual, but it was inconclusive. She acknowledged that it could not be determined how many more individuals, just that it was more than one. Prost confirmed that DNA can come from all kinds of sources, and DNA can degrade when it is out in the weather. She acknowledged that if someone was walking along the trail and spit on the shirt, DNA from the saliva could transfer to the shirt, but a major contributor of DNA would likely be someone who had more significant contact with the item.

Ashley Stinnett with the Camden PD testified that she transported the properly sealed evidence collected in the case from the evidence room in Camden to the Arkansas Crime Lab.

Jonathan Cooper testified that he previously had resided in Ouachita County and worked for Camden PD. After the robbery, Cooper came on duty and obtained a photo from the Camden PD website of the robbery suspect. Cooper noted that he had no relationship with Herron but saw him at the high school he and his brother attended, and Herron was friends with Cooper's younger brother. He stated that he knew Herron well enough that whenever he saw him at Walmart, he would give him a "hand up," and he testified that, had he seen Herron in October 2023, he would have recognized him. Cooper looked at the photo and identified the person as Herron. He denied that other law enforcement had given him the suspect's identity before he saw the photo. He explained that

he knew White from seeing her around and growing up in her neighborhood. He testified that he went to see White in October 2023.

Hopson testified that she arrived at work around 8:00 a.m. and was there by herself as usual. Hopson stated that there are two registers in the store and that she had to set them up with $250 in each drawer. Hopson testified that on the morning of the robbery, a man came in and pointed a gun at her. She explained that she did not recognize the person and that he had a scarf wrapped around his head so that she could see only his nose and eyes. Hopson stated that the man's nose stood out to her. Hopson testified that she was mentally injured from the incident but sustained no physical injuries. She pointed out that she was never struck or hit but that the incident was scary. Hopson confirmed that no weapon was ever fired.

The State rested, and Herron moved for a directed verdict, arguing specifically that the jury would have to rely on speculation and conjecture to determine that a firearm was used or that any individual identified was Herron. Counsel noted that there was DNA from multiple people on the shirt and that it was found outside on a trail where anyone could have walked. Counsel pointed out that Cooper, the only witness who positively identified Herron, knew him only casually and identified him from a "fuzzy" photo. The State responded that Cooper specifically identified Herron and that White said it looked like him. The State noted that the t-shirt was located near the scene and appeared to be the one worn by the robber because of the color and style of lettering. The State pointed out that the

8

robber appeared to be holding an actual gun and was pointing it like a gun. Herron's motion was denied.

The defense did not present any evidence, but the motion for directed was renewed and again denied. The parties presented closing arguments, the jury was instructed, and the case was submitted for deliberation. The jury returned with a verdict of guilty on one count of aggravated robbery. After the sentencing hearing, the jury ultimately sentenced Herron to twelve years' incarceration. The sentencing order was filed on July 23, 2025, and a notice of appeal was timely filed on July 30.

## II. *Standard of Review*

A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Muhammad v. State*, 2026 Ark. App. 184, ___ S.W.3d ___. In reviewing a sufficiency challenge, we view the evidence in the light most favorable to the State and consider only the evidence supporting the verdict. *Lever v. State*, 2025 Ark. App. 560, 725 S.W.3d 819. We affirm if substantial evidence supports the conviction. *Id.*

Substantial evidence is evidence of sufficient force and character to compel a conclusion without resort to speculation or conjecture. *Id.* Circumstantial evidence may constitute substantial evidence if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *See Oliger v. State*, 2025 Ark. 8, 704 S.W.3d 305. Whether the evidence excludes every other reasonable hypothesis is a question for the jury. *See Break v. State*, 2022 Ark. 219, 655 S.W.3d 303.

9

The law makes no distinction between direct and circumstantial evidence when appellate courts review the sufficiency of the evidence. *See Owens v. State*, 2017 Ark. App. 353, 525 S.W.3d 480.

### III. *Discussion*

Herron contends that the evidence identifying him as the robber was insufficient and required the jury to speculate. He emphasizes that the victim, Hopson, could not identify him, the DNA evidence implicating him was not exclusive, and the remaining proof was merely circumstantial. We disagree.

### A. Direct Evidence of Identity

Contrary to Herron's argument, this case does not rest solely on circumstantial evidence. The jury viewed surveillance videos and still photographs showing the robber with partially visible facial features. The jury was entitled to compare those images with Herron's appearance in court and determine the robber's identity.

Additionally, two witnesses familiar with Herron--Cooper and White--identified him as the individual depicted. This court has held that such testimony, even from witnesses not present at the crime, may constitute substantial evidence of identity. *See Jones v. State*, 2019 Ark. App. 350, 582 S.W.3d 859 (holding identification by two acquaintances from video sufficient). The credibility of these witnesses and the weight to be given their testimony were matters for the jury. *See Break*, *supra*.

### B. Circumstantial Evidence Supporting the Verdict

The circumstantial evidence in the record before us further corroborates the identification of Herron. The robber had a black t-shirt with distinctive lettering wrapped around his head. A matching shirt was found along the escape route with cash taken from the store. And Herron was identified as the major contributor of DNA found on that t-shirt.

While Herron argues that the DNA could have been transferred innocently or that the t-shirt could have belonged to someone else, the jury was not required to accept these alternative explanations. The question is not whether the evidence could support another hypothesis but whether the jury had to resort to speculation to reject it. *See Break*, *supra*.

Here, the proximity of the t-shirt to the crime scene, its similarity to the one worn during the robbery, and Herron's DNA as the major contributor provided strong circumstantial evidence linking him to the robbery.

## C. Totality of the Evidence

When viewed collectively, the evidence included the following: surveillance images showing the robber's partially visible face; identification by two witnesses familiar with Herron; the escape-route recovery of clothing matching that worn by the robber; and DNA evidence on that clothing identifying Herron as the major contributor. This evidence was sufficient to permit the jury to conclude, without speculation or conjecture, that Herron was the robber.

Although Herron relies on cases involving purely circumstantial evidence and competing reasonable hypotheses, this case involves both direct and circumstantial proof.

Even in cases based on circumstantial evidence, the determination of whether alternative hypotheses are reasonable is for the jury. *See, e.g.*, *Break*, *supra*.

The jury was free to reject Herron's proposed explanations of innocence and to find that the evidence excluded every reasonable hypothesis other than guilt. Viewing the evidence in the light most favorable to the State, we hold that substantial evidence supports Herron's conviction. Accordingly, the circuit court did not err in denying the motion for directed verdict.

Affirmed.

KLAPPENBACH, C.J., and HIXSON, J., agree.

*Law Offices of John Wesley Hall*, by: *Samantha J. Carpenter*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Mallory Wood*, Ass't Att'y Gen., for appellee.